## NATIONAL LABOR RELATIONS BOARD v. LEHIGH PORTLAND CEMENT CO.

### No. 6574.

United States Court of Appeals
Fourth Circuit.

Argued June 4, 1953.

Decided July 21, 1953.

Norton J. Come, Attorney, N. L. R. B., Washington, D. C. (George J. Bott, General Counsel, David P. Findling, Associate General Counsel, A. Norman Somers, Assistant General Counsel, Washington, D. C. and Edmond F. Rovner, Attorney, N. L. R. B., New York City, on brief), for petitioner.

Robert H. Kleeb, Philadelphia, Pa. (Souser & Schumacker, Philadelphia, Pa., on the brief), for respondent.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The question in this case is whether the Lehigh Portland Cement Company was required by §§ 8(a) (1) and 8(a) (5) of the National Labor Relations Act as amended, 29 U.S.C.A. § 151 et seq., to bargain with the United Cement, Lime and Gypsum Workers International Union, the bargaining representative of 254 out of a total of 288 of its employees, in respect to the rental of 65 dwelling units owned and maintained by the company in the vicinity of the plant. The Labor Board held that the housing units were a mandatory subject of the bargaining provision of the Act, 101 N.L.R.B. 1010, and has petitioned this court to give effect to its order whereby it directed the company to cease and desist from refusing to bargain collectively with the union in respect to the rentals.

The company maintains a plant for the manufacture of cement at Fordwick, Virginia, an unincorporated community of less than 1,000 people. The company now owns 65 dwelling units located within a mile of the plant. This number remains out of a total of 150 units which were similarly located when it acquired the plant in 1916. Five of the 65 units are leased to non-employees of whom 3 were employed when their tenancy began; one is the mother of an employee who pays the rent, and one is the sublessor of an employee of the company; of the remaining 60 units 10 are rented to supervisory and clerical employees, who are outside the bargaining unit, and 50 are rented to employees who are members of the bargaining unit. The company pursues the policy of renting its houses to its employees and maintains the present allotment as between employees within and employees without the bargaining unit. Housing in the area is in short supply and consequently there is a demand for the company houses. There were 10 applications for them at the time of the hearing. Applications are not granted in the order in which they are filed or on the basis of the seniority of the applicants. The houses are maintained and kept in repair by the company. The rents in most instances are deducted from the wages of the employees and in other cases the rents are paid in cash at the company's office.

The rental of the houses which had not been raised for fourteen years prior to 1951 were uniformly low. The company gave notice in March, 1951 that the rents would be raised as of May 1, 1951 and this announcement led to a protest on the part

of the tenants and a request by them and by the union that the company first take up the matter with the union. The company, however, refused on the ground that the rent of the houses was not subject to collective bargaining, and the charges of refusal to bargain were then made which led to the instant proceeding. The question of rentals has not entered into the bargaining between the company and the union during the nine years in which the union has been the accredited representative of the men.

A majority of the employees, 188 in number, do not live in company houses. Of these 131 own their own houses and 57 rent privately owned houses, located as follows: 37 own houses in the Fordwick area; 56 own houses in the nearby Craigsville area, and 35 rent houses in the Craigsville area, all of which are within two miles of the plant; 11 employees own houses in Augusta Springs and 11 rent houses in Augusta Springs, which are located within three to six miles of the plant; 24 employees own houses in Goshen and 9 rent houses in Goshen located within three to six miles from the plant; two employees own homes in Swoope, which is fourteen miles from the plant, and one owns a house in Headwaters, which is twenty miles from the plant; one employee rents a house in Staunton, Virginia, and one rents a home in Waynesboro, Virginia, which are located twenty-three miles and thirty-five miles respectively from the plant.

The position of the employer is that the amount of rent which it charges for its houses does not relate to "rates of pay, wages, hours of employment, or other conditions of employment", and hence it is not a matter as to which it is required to bargain with the union under § 9 of the statute. It points out that the statute does not purport to interfere with an employer's freedom of contract and hence it is at liberty to deal with its property as it sees fit, unless in so doing it does something which affects the conditions of employment under which its employees work; and it contends that these conditions are not affected in this case because the company's

houses are not a necessary part of the business and employees are not required to occupy company houses in order to hold their places at the plant. Hence it is said that the present case is not covered by our decision in N. L. R. B. v. Hart Cotton Mills, Inc., 190 F.2d 964, where we said that if company houses are a necessary part of an employer's enterprise or are rented to its employees at such a rate as to constitute a substantial part of their pay, they are a proper subject of collective bargaining.

In that case, however, we did not lay down the general proposition that company houses are never the proper subject of collective bargaining unless they are a necessary part of the enterprise or their occupancy affects the workers' pay. It is sufficient to bring them within the field of collective bargaining if their ownership and management materially affects the conditions of employment. We agree with the Board that such is the case at the company's plant at Fordwick. That no increase in rent was made between 1937 and 1951 indicates that the rents have been below the prevailing rate; and this circumstance coupled with the convenience of living nearer to the place of work than the great majority of the employees has given the occupants of the company's houses substantial advantages which undoubtedly affected their conditions of employment.

Obviously the company's ownership and control contribute to this result. The extent of its influence has of course been curtailed by the reduction in the number of company houses from 150 to 65 during the period of the company's ownership. Nevertheless it is still substantial; and it bears directly on the crucial question in the case, since the retention by the company of a sufficient number of dwellings to house 25 per cent of the employees near the plant in an area where houses are hard to get gives the company a means of affecting the living conditions of a large part of its working force through the power of granting or withholding the privilege and of fixing of terms upon which it may be exercised. Under the circumstances of this

case the matter is of sufficient importance as to require its submission to the process of collective bargaining. The order of the Board will be

Enforced.