**AMERICAN SMELTING AND REFINING COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 22216.

United States Court of Appeals
Ninth Circuit.

Jan. 22, 1969.

Certiorari Denied June 2, 1969.
See 89 S.Ct. 1998.

Stephen W. Pogson (argued), of Evans, Kitchel & Jenckes, Phoenix, Ariz., for appellant.

Corinna L. Metcalf, Washington, D. C. (argued), Marcel Mallet-Prevost, Asst. Gen. Counsel, Arnold Ordman, Gen. Counsel, Michael N. Sohn, Washington, D. C., Charles M. Henderson, Director, Albuquerque, N. M., for appellee.

Before BARNES and HAMLEY, Circuit Judges, and McNICHOLS, District Judge *.

HAMLEY, Circuit Judge:

This matter is before us on the petition of American Smelting and Refining Company (company) to review and set aside an order of the National Labor Relations Board, and upon the cross petition of the Board to enforce the order. The Board's decision and order are reported at 167 NLRB No. 26.

The Board determined that the rental of company housing accommodations adjacent to the company's Silver Bell, Arizona, mine is included among the conditions of employment of the Silver Bell employees represented by Local Union 13886, United Mine Workers of America (union). This being the case, the Board held that the company, by raising rental charges for this company housing without prior negotiations with the union, violated sections 8(a) (5) and (1) of the National Labor Relations Act, as amended (Act), 61 Stat. 136 (1947), 29 U.S.C. § 158(a) (5) and (1) (1964).

Accordingly, the Board ordered the company to cease and desist from unilaterally increasing rental charges without prior notification to, and bargaining with, the union. Affirmatively, the Board ordered the company to reinstate the lower rental charges in effect prior to the unilateral increases; to make whole, with interest at six percent per annum, all employees in the affected unit who had paid the increased rental charges; and to post appropriate notices.

Section 9(a) of the Act, 29 U.S.C. § 159(a) (1964), provides, in effect, that the representative designated by the majority of the employees of an appropriate unit of employees shall be the exclusive representative

" * * * for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment."

It is not disputed that the company increased the rental on its two- and three-bedroom houses adjacent to the Silver Bell mine without prior negotiation with the union. Thus the critical Board determination, which the company challenges, is that the rental rate for these company houses is a "condition of employment" of the affected employees within the meaning of the quoted statute.

In the decision and order under review, the Board adopted the findings and conclusions of the Trial Examiner with minor modifications of the Trial Examiner's recommended order. The Trial Examiner found, apparently as a matter of law, that:

" * * * the rental of company housing accommodations [in a company town] is by its very nature an integral part of the employment relation and a valuable incident of the employer-employee relationship and thus, necessarily included among the conditions of the employees' employment and bargainable as a condition of employment whether or not it is treated as included within the term 'wages' as used in Section 9(a) of the Act."

In so deciding, the Trial Examiner relied on the decisions of the Board in Bemis Bro. Bag Co., 96 NLRB 728; Lehigh Portland Cement Co., 101 NLRB 529; and Florida Citrus Canners Cooperative, 124 NLRB 1182.

We think that the determination whether the rental of company housing constitutes a "condition of employment" within the meaning of section 9(a) of

---

* The Honorable Ray McNichols, United States District Judge for the District of Idaho, sitting by designation.

the Act depends upon an evaluation of the relevant facts of the particular case. N. L. R. B. v. Bemis Bro. Bag Co., 5 Cir., 206 F.2d 33; N. L. R. B. v. Lehigh Portland Cement Co., 4 Cir., 205 F.2d 821. Thus, we cannot accept the Trial Examiner's determination of this case as a matter of law. The Board, however, in its decision based on the Trial Examiner's findings, appears to have analyzed the facts and applied the test set forth in N. L. R. B. v. Lehigh Portland Cement Co., supra, at 823:

> "It is sufficient to bring them [company-owned housing] within the field of collective bargaining if their ownership and management materially affects the conditions of employment."

The Board found, in this case as in *Lehigh*, that the low rents [1] and the advantages of living near to the place of work in an area where housing was in demand materially affected the conditions of employment.

■ The essential facts are not in dispute. The company owns and maintains 175 two- and three-bedroom houses, twenty-four two- and three-bedroom apartments, and fifty trailer spaces in Silver Bell, Arizona, a town consisting solely of this company housing plus a few stores, a church and post office. There is a waiting list for the houses, and, until the rent increase in 1966, the rents had been maintained at the 1954 level.[2]

All of the residents of the company housing are employees except for five or six who service the town's needs. As employees leave the company, they are asked to vacate the company housing. About seventy percent of the union members live in company housing at Silver Bell; approximately twenty-five percent live in Tucson, forty miles southeast, and the rest live in Cortaro and Marana, towns of under one thousand population located twenty-five miles to the east of Silver Bell. Silver Bell itself is located at the end of a gravel road, twenty miles from the nearest main road.[3]

Appellant argues that this case is "on all fours" with N. L. R. B. v. Bemis Bro. Bag Co., supra, in which the court refused to support the Board's finding that the company housing was a "condition of employment." The circumstances of that case, however, are quite different from those in this case. There, the company plant and housing were on the edge of a town of thirteen thousand. Only about a third of the employees lived in the company houses, and housing and public transportation were available. In our case, on the other hand, the nearest private housing is about twenty-five miles away, two-thirds of the union members live in the company housing, there is a waiting list for the housing, the rent has not been raised in the past twelve years, and public transportation is apparently not readily available.

In N. L. R. B. v. Lehigh Portland Cement Co., supra, where only twenty-five percent of the employees lived in company housing and nearly all of the employees lived within six miles of the plant, the court still found that:

> "the retention by the company of a sufficient number of dwellings to house 25 per cent of the employees near the plant in an area where houses are hard to get gives the company a means of affecting the living conditions of a large part of its working force through the power of granting

1. The Board used the same reasoning in this case as it did in *Lehigh* when it found that the fact that "no increase in rent was made between 1952 and 1966 indicates that the rents have been below the prevailing rate."

2. Although there are some vacancies in both the apartments and the trailer spaces, we have no evidence that either of these types of housing is comparable with the houses. In any event, only the rent for the houses has been increased.

3. There was no explicit finding, nor testimony, on the availability of housing in the area surrounding Silver Bell. However, it is apparent from an examination of the hearing record that the nearest concentration of private housing is approximately twenty-five miles from Silver Bell.

or withholding the privilege and of fixing of terms * * *." *Lehigh,* at 823.

The record shows also that the company, in the early 1960's, relied on the availability of company housing as a basis for rejecting the union's bargaining demands for travel allowance pay. Thus, the Board found that the company regarded the rental facilities as one of the employees' conditions of employment.

We find that the facts here presented are sufficient to justify the Board's conclusion that the company housing, in this case, is a "condition of employment," and that the company must therefore bargain about its terms with the union. We affirm the Board's order and decision. The order of the Board will be

Enforced.