**McCALL CORPORATION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 12638.**

United States Court of Appeals,
Fourth Circuit.

Argued May 6, 1970.

Decided Sept. 17, 1970.

Francis X. Lee, Dayton, Ohio (John O. Henry and Estabrook, Finn & McKee, Dayton, Ohio, Robert H. Patterson, Jr., and McGuire, Woods & Battle, Richmond, Va., Philip R. Becker and Cowden, Pfarrer, Crew & Becker, and John Heron, Dayton, Ohio, on brief( for petitioner.

Glen M. Bendixsen, Atty., N.L.R.B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Michael S. Winer, Atty., N.L.R.B., on brief), for respondent.

Benjamin Werne, New York City, for National Automatic Merchandising Assn. as amicus curiae.

Before SOBELOFF, BOREMAN and BUTZNER, Circuit Judges.

PER CURIAM:

In Westinghouse Electric Corp. v. NLRB, 387 F.2d 542 (4th Cir. 1967), this court, sitting en banc, declined to enforce an order of the National Labor Relations Board requiring an employer to bargain over the prices of food served by an independent contractor in the company's cafeterias. We held, with two judges dissenting, that under the circumstances of the case the cafeteria prices were not "conditions of employment" within the meaning of Section 8(d) of the Labor Act [29 U.S.C. § 158 (d)], and that consequently the employer's refusal to bargain on this issue was not a violation of Section 8(a) (5) and (1) of the Act [29 U.S.C. § 158 (a) (5) and (1)]. The reasons for and against this ruling have been adequately discussed in the majority and minority opinions on the subject and need not be recounted.[1]

The Board now asks us to overrule *Westinghouse*. We are not, however, persuaded that we should. Neither intervening authority nor change in

[1]. Westinghouse Electric Corp. v. NLRB, 387 F.2d 542 (4th Cir. 1967) (en banc), 369 F.2d 891 (4th Cir. 1966) (panel); McCall Corp., 172 NLRB No. 55, 69 LRRM 1187 (1968); Westinghouse Electric Corp., 156 NLRB 1080, 61 LRRM 1165 (1966); Weyerhaeuser Timber Corp., 87 NLRB 672, 25 LRRM 1163 (1949).

circumstances suggests any cause for departing from our decision.

Alternatively, the Board seeks to distinguish the cases. The material facts, however, are similar. Here, as in *Westinghouse,* the employees had other places to eat or they could bring their own lunches. In neither instance were the plants so isolated that employees were dependent on the food that caused the controversies. It is this circumstance that chiefly distinguishes these cases from Weyerhaeuser Timber Co., 87 NLRB 672, 25 LRRM 1163 (1949).

The principal factual difference between *Westinghouse* and *McCall* lies in the degree of control the employer exercised over the caterers who sold the food. In *Westinghouse* the caterer fixed the prices subject to a contractual provision that the "quality and prices of the meals served and the hours of service thereof in said cafeteria shall at all times be reasonable." The employer could enforce this provision by unilaterally terminating the contract on sixty days written notice. In *McCall* the employer supplied the food and fixed the prices. We believe, however, that the difference between the indirect control exercised in *Westinghouse* and the direct control in *McCall* over the quality and prices of food is not of sufficient significance to affect the result.

Enforcement denied.

SOBELOFF, Circuit Judge (dissenting):

The court is here concerned with the question whether the price charged for food in certain plant vending machines was a mandatory subject of bargaining. The Board held that it was and ordered the Company to bargain over the issue. The Company, however, disclaims any obligation to bargain, maintaining that the price of the food sold in the machines is not a "condition of employment" within the meaning of section 8(d) of the Taft-Hartley Act.

My objection to the court's result is twofold. I adhere to the view previously expressed by Judge Craven and myself that Westinghouse Electric Corp. v. NLRB, 387 F.2d 542 (4th Cir. 1967), rev'g 369 F.2d 891 (4th Cir. 1966), was wrongly decided. 387 F.2d at 550; 369 F.2d 891. But I also think this case quite distinguishable from *Westinghouse.*

I align myself with both Judge Craven, writing for the original panel in Westinghouse, and with Judge Boreman, writing for the majority en banc, in the view that the test whether an issue is a mandatory subject of bargaining was properly defined by this court in NLRB v. Lehigh Portland Cement Co., 205 F.2d 821 (4th Cir. 1953), as whether the issue "materially affects the conditions of employment." *Id.* at 823. As Judge Hamley has noted in a recent opinion for the Ninth Circuit, that determination "depends upon an evaluation of the relevant facts of the particular case." American Smelting and Refining Co. v. NLRB, 406 F.2d 552 (9th Cir. 1969). Starting from this premise I have two difficulties with the reasoning of the *Westinghouse* majority and the majority in the present case.

I

The majorities here and in *Westinghouse* pay too little respect to the determination of the National Labor Relations Board which it reverses. The Board was created as a body with particular expertise to assist in construing the statute as applied to the realities of day-to-day employee-employer relationships. The Supreme Court has spelled out the respective roles of the Labor Board and the courts. In the leading case on the subject it said that the Board is

one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertise which courts do not possess and therefore must respect.

Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951). In that case the Court went on to state that Board findings should be overturned

> when the record before a Court of Appeals *clearly precludes the Board's decision from being justified by* a fair estimate of the worth of the testimony of witnesses or *its informed judgment on matters within its special competence* or both. Id. at 490, 71 S.Ct. at 466 (emphasis added).

One could hardly imagine a situation where the Board's expertise would be more relevant and helpful than in giving content to the phrase "conditions of employment" in order to determine which issues are properly mandatory subjects of bargaining. How, on the facts either of this case or the *Westinghouse* case, the majority finds the Board's decision clearly precluded is beyond my comprehension. The price of food supplied on company premises seems realistically to be a "condition of employment" subject to mandatory bargaining. "In common parlance, the conditions of a person's employment are most obviously the various physical dimensions of his working environment." Fibreboard Paper Products Corp. v. NLRB, 379 U.S. 203, 222, 85 S.Ct. 398, 409, 13 L.Ed.2d 233 (1964) (Stewart, J., concurring).[1] No employee can reasonably be expected to work a full eight-hour day without eating. Accordingly, I regard the availability or nonavailability of reasonably priced food as an important "physical dimension" of any employee's working environment. The monetary amount at issue in a given case is irrelevant; the test of "materiality" we erected in NLRB v. Lehigh Portland Cement Co.,

*supra,* is a qualitative, not quantitative, test.

The majority apparently embraces the view that the furnishing of food by an employer does not become a significant feature of the employment relationship unless the employees have no alternative whatsoever. This is too restrictive a construction of the words "conditions of employment." Here, as in *Westinghouse,* there was substantial evidence that reasonable alternative sources of food were not available. The record demonstrates an ample basis for the Board's conclusion that outside sources of food (restaurants, chuck wagons, etc.) are an inadequate source of supply when available, and are not available at all for employees on some shifts. The Company cafeteria cannot accommodate all employees and at any rate cannot be patronized by employees who are forced, in accordance with contractual provisions, to work through the lunch hour with only a ten to fifteen minute break. Under these circumstances it seems to me that it is the majority's decision here that is "clearly precluded" on the record before us—not that of the Board.

## II

The majority, in paying such deference to *Westinghouse,* fails to give adequate consideration to the critical difference between that case and this. In *Westinghouse,* as the court stressed, control over the food and food prices was vested in an independent third party: "the caterer, not Westinghouse, determined the prices of the food and coffee served in the cafeterias." 387 F.2d at 548. The court relied heavily

---

1. Thus, in NLRB v. Washington Aluminum Co., 370 U.S. 9, 82 S.Ct. 1099, 8 L.Ed.2d 298 (1962), the Supreme Court construed the phrase "conditions of employment" in another section of the Taft-Hartley Act to include the lack of heat in a *cold shop*:

> The findings of the Board * * * show a running dispute between the machine shop employees and the company over the heating of the shop on cold days—a dispute which culminated in the decision of the employees to act concertedly in an effort to force the company to improve that condition of their employment. *Id.* at 15–16, 82 S.Ct. 1103.

on this fact in overturning the Board order:

> The Board would order Westinghouse to bargain with S.E.A. about prices charged by the independent caterer with full knowledge that *Westinghouse cannot make an enforceable contract to change those prices since it does not set them. Id.* at 550 (emphasis added).

The crucial element of control, absent in *Westinghouse* but present here, is dismissed by the majority as "not of sufficient significance to affect the result." While in the McCall plant the vending machines are owned by an outside concern, it is the McCall Corporation which exercises total control over the machines. It alone determines what food is to be placed in them, supplies the food from its own kitchens, and sets the prices. Here, though the employees' dispute is directly with the employer rather than with a third party, the majority thinks itself controlled by *Westinghouse* simply because both cases involve bargaining over the price of food, though the circumstances are entirely different.

In the *Westinghouse* case the employer had no final say about prices. He could, of course, enter into a negotiation with the caterer with the possibility of a disagreement, but the employer could not unilaterally impose his will on the caterer without terminating the contract. Here, on the other hand, the employer is completely unfettered in fixing prices. He does not have to consult anyone and there is no other party to say him nay.

Even if *Westinghouse* is assumed to be correct on *its* facts—a proposition with which I disagree for the reasons above set forth—the majority's decision in the present proceeding is, nevertheless, not justified. My brethren pay scant heed to the stark factual diversity presented by the two cases. They under-take to blunt the force of an employer's control over the selection and pricing of food, though this was the very element the *Westinghouse* en banc opinion so effectively emphasized and relied upon.

I respectfully disagree and submit that the Board's cross-petition for enforcement should be granted.