**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LADISH CO., Respondent.**

**No. 75–1865.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 23, 1976.

Decided July 27, 1976.

---

Elliott Moore, Deputy Assoc. Gen. Counsel, Andrew F. Tranovich, Robert A. Gian-nasi, N.L.R.B., Washington, D. C., for petitioner.

Benjamin Werne, New York City, amicus curiae.

Fred G. Groiss, Elwin J. Zarwell, Milwaukee, Wis., for respondent.

Before PELL and BAUER, Circuit Judges, and PERRY, Senior District Judge.[*]

PELL, Circuit Judge.

This case comes before the court on a National Labor Relations Board's petition for enforcement of an order directed against the Ladish Co. The case was heard by the Board on stipulated facts,[1] and the Board found that the Company violated sections 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. § 151 et seq., by refusing to honor a union's request to bargain on the formulation and implementation of vending machine prices in the Company's plant. In issue is whether the price of food sold from vending machines in the circumstances here involved is a mandatory subject of bargaining under section 8(d) of the Act, 29 U.S.C. § 158(d).[2]

The Company and the charging Union[3] are parties to a collective bargaining agreement. The Union represents approximately 1800 of the Company's 4800 employees. The Company has bargaining relationships with six other unions representing eight other bargaining units.

The Company has approximately twenty-nine "vendette" areas located throughout its plant and office facilities. A vendette is a room which contains vending machines, tables, and chairs. The principal items sold are beverages, hot foods, sandwiches, candy,

---

[*] Senior District Judge Joseph Sam Perry of the United States District Court for the Northern District of Illinois is sitting by designation.

[1] The parties waived a hearing before an Administrative Law Judge and the issuance of an Administrative Law Judge's decision and recommended order.

[2] 29 U.S.C. § 158(d) provides in relevant part:
(d) For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment . ..

[3] District No. 10 and its Local Lodge 1862, International Association of Machinists and Aerospace Workers, AFL–CIO.

pastry, and cigarettes. No other eating facilities exist at the plant other than some scattered vending machines located outside the vendette areas. The vending machines are owned and maintained by outside contractors, but the Company makes available and maintains the space in which the machines are located. Access for electricity and water needed to operate the machines is provided. Ladish receives a commission for the items sold from the machines as reimbursement for providing these services. The prices for the items sold in the machines are established by the companies owning and maintaining them. The Company's control over prices is limited to persuasion and its ability to replace completely a vendor.

The majority of the Company's employees, including all the employees in the charging Union, receives a fifteen minute paid lunch period. During the paid lunch period, the employees are not permitted to leave the plant. Approximately seventy percent of the employees in the charging Union purchase their lunches from the vending machines; the remaining thirty percent bring their lunches to work. Ninety percent of the employees in the charging Union utilize the vending machines for their beverages.[4] The employees who bring their lunches are permitted to use the vendette tables and chairs for the purpose of eating their lunches.

In 1970 the Company notified the Union that price increases might be necessary. The Union filed a grievance objecting to any increased prices. The grievance was held in abeyance because the prices were not increased. In 1972 the Company informed the Union that vending machine prices were going to be increased. The Union notified the Company that it was taking its grievance out of abeyance and that it was protesting the announced unilateral price increases. Prices were increased, and the Company indicated in response to the grievance that it was not responsible for the increased prices and that the matter was not considered a bargainable item between the Company and the Union.

In 1974 prices were again increased without negotiations with the Union. The Union reinstated its 1972 grievance and asked the Company to negotiate over the price increases. The Company replied that it did not believe that the increase in vending machine prices was a mandatory subject of collective bargaining and that it would not negotiate regarding the subject. A charge was then filed with the National Labor Relations Board.

The Board held that the vending machine prices were a significant condition of employment and therefore concluded that the Company violated the Act by refusing to bargain. The Board recognized that it would not be practical to require the Company to consult with the Union before changing the price of any particular food item. It nevertheless ordered that the Company would be required to bargain after increases were effectuated unilaterally if the Union requested such bargaining.[5] The Board now seeks enforcement of its order.

In *Seattle First National Bank v. NLRB,* 444 F.2d 30, 32–33 (9th Cir. 1971), the Ninth Circuit summarized the standards to be applied in determining whether bargaining is required under the Act:

> Only as to those matters enumerated in Section 8(d) of the Act is there a mandatory obligation to bargain under Section 8(a)(5). *Fibreboard Paper Products Corp. v. NLRB,* 379 U.S. 203, 210, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964); *NLRB v. Wooster Div. of Borg-Warner Corp.,* 356 U.S. 342, 349, 78 S.Ct. 718, 2 L.Ed.2d 823 (1958). And, as to those matters specified in Section 8(d), the phrase "terms and conditions of employment" is to be interpreted in a limited sense which does not include every issue that might be of interest to

4. In the stipulation the Company indicates that it does not possess data to verify these percentage figures, but it concedes their validity for the purposes of this action.

5. The opinion of the Board is published in 219 NLRB No. 60 (1975).

unions or employers. *Fibreboard Paper Products Corp. v. NLRB, supra,* 379 U.S. at 220, 85 S.Ct. 398 (Stewart, J., concurring); *Westinghouse Electric Corp. v. NLRB,* 387 F.2d 542, 545 (4th Cir. 1967) (en banc). A mere remote, indirect or incidental impact is not sufficient. In order for a matter to be subject to mandatory collective bargaining it must *materially* or *significantly* affect the terms or conditions of employment. *American Smelting & Refining Co. v. NLRB,* 406 F.2d 552, 554 (9th Cir.), cert. denied, 395 U.S. 935, 89 S.Ct. 1998, 23 L.Ed.2d 450 (1969); *Westinghouse Electric Corp. v. NLRB, supra,* 387 F.2d at 547; *NLRB v. Lehigh Portland Cement Co.,* 205 F.2d 821 (4th Cir. 1953). [Emphasis in original; footnote omitted.]

The General Counsel appears to argue that the statute mandates bargaining about any benefits accruing to employees out of their relationship with their employer. The General Counsel places primary reliance for this proposition on language found in *NLRB v. Detroit Resilient Floor Decorators,* 317 F.2d 269 (6th Cir. 1963). In *Detroit Floor* a union sought to compel an employer to bargain over contributions to an industry promotion fund. The Board held that the employer was not required to bargain about these contributions because they were neither "wages, hours nor a term or condition of employment." The Sixth Circuit enforced the order of the Board. In its opinion the court noted that the Board had held that the statutory "wages, hours, and other terms and conditions of employment," includes "all emoluments of value or other benefits accruing to employees out of their relationship with their employer." 317 F.2d at 270. It then cited as examples: pension plans, vacations, seniority, reimbursement for expenses away from headquarters, sick leave, stock purchase plans, group insurance and bonuses. We do not read the Sixth Circuit's opinion as indicating that an employer must bargain over any "benefit," regardless of whether that benefit was material or significant. The examples the Sixth Circuit used are consistent with this interpretation. This conclu-

sion in no way conflicts with *NLRB v. Central Illinois Public Service Co.,* 324 F.2d 916 (7th Cir. 1963), in which this court held that it was an unfair labor practice for a gas company unilaterally to terminate a thirty-three percent discount on gas sold to employees which the company had encouraged the employees to consider when comparing their wages with other employees' wages or with *Inland Steel v. NLRB,* 170 F.2d 247 (7th Cir. 1948), cert. denied on relevant issue, 336 U.S. 960, 69 S.Ct. 887, 93 L.Ed. 1112 (1949), aff'd on other grounds sub nom. *American Communications Association v. Douds,* 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925 (1950), in which this court held that an employer must bargain about retirement and pension benefits.

In *Weyerhaeuser Timber Co.,* 87 NLRB 672 (1949), the Board ordered bargaining on the cost of meals furnished by an employer. Four operations were involved in the case—a sawmill, which was five miles from the nearest town, and three logging camps, which were each approximately twenty miles from the nearest town. There was no public transportation to the towns, and the employer provided none. The meals were served below cost. The Board held that although the isolation of the camps and the mill differed in degree, both were sufficiently isolated that the cost of meals had to be considered a condition of employment.

The Board in its brief in the case before us stresses the fact that only five percent of the sawmill employees used the company eating facilities. We find little significance in this because the three logging camps were much more remote from the nearest town, and most of the company employees depended on company kitchens for all of their meals. We also note the distinction between *Weyerhaeuser* as well as other analogous cases cited by the Board, e. g., *Central Illinois Public Service,* and the present case in that the Board cases frequently involve a direct relationship or control over the expenditure or cost involved as opposed to the indirect situation here involved.

More recently the First and Fourth Circuits have rejected similar arguments in cases more similar to the one at bar. In *Westinghouse Electric Corp. v. NLRB,* 387 F.2d 542 (4th Cir. 1967) (en banc), the court held that a company was not required to bargain concerning the prices charged in cafeterias in its plants. Westinghouse provided the capital equipment to an independent contractor who operated the cafeterias. Either party had the right to terminate the contract on sixty days notice. Between forty and forty-five percent of the employees ate in the cafeterias; the remainder brought their lunches. The court distinguished *Weyerhaeuser* factually and noted that the standard that the Board applied in *Weyerhaeuser* was broader than that permitted by the subsequent Supreme Court case, *Fibreboard Paper Products Corp. v. NLRB,* 379 U.S. 203, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964). Concerning the Board's analysis, the court stated (387 F.2d at 549):

> Stripped of unsupported presumptions and guesses, the statement of the Board majority is that anyone who prefers buying his meals in a cafeteria to bringing his lunch from home is, for that reason, a captive customer of the cafeteria. The only compulsion is the individual's own desire or preference, which is precisely the same as saying that there is no compulsion.

The Fourth Circuit reaffirmed *Westinghouse* in *McCall Corp. v. NLRB,* 432 F.2d 187 (4th Cir. 1970). In *McCall* the employer, rather than an independent contractor, supplied the food and fixed the prices; but the court held that this was insufficient to distinguish *Westinghouse* and denied enforcement to the Board's bargaining order. In *NLRB v. Package Machinery Co.,* 457 F.2d 936 (1st Cir. 1972), the First Circuit distinguished *Weyerhaeuser* and followed *Westinghouse* to hold that the company need not bargain over cafeteria and vending machine prices. The court found that virtually all employees used the vending machines on occasion and about one half patronized the cafeteria. The court specifically refused to accept what it called the Board's "newly expanded definition of 'conditions of employment,' . . . as it relates to company-supplied food services." *Id.* at 937.

The General Counsel argues that the present case is stronger in favor of the Board's position than the First and Fourth Circuit cases because the employees at Ladish are only allowed a fifteen minute lunch break, during which they are not permitted to leave the plant, and because higher percentages of employees use the facilities. We, however, find merit in the dissent of Board Member Kennedy, who indicated that this is the weakest record the Board has faced for finding a violation. Certainly the facts are not more compelling. Board Member Kennedy noted that in *Westinghouse* the employer retained greater indirect control over the prices than in this case due to a clause in the contract with the caterers, that in *Package Machinery* the employer was able to influence vending prices by adjusting the amount of the subsidy paid to caterers as an incentive, and that in *McCall* the employer itself determined the prices. Member Kennedy did not believe that the Company's power to terminate the vending machine contract gave it effective power over the prices charged, and we concur in his judgment. The Company does not dispute that it is required to bargain over hours of employment, including the lunch period. Finally, the Board refuses to consider that bringing one's own lunch is a viable alternative to purchasing lunch from the vending machines. Thirty percent of the employees in the charging Union do so now. Board Member Jenkins attempts to provide some insight into why "brown bagging" is not a viable alternative to commercial food service by citing *United Telephone System,* 64 Lab.Arb. 525 (1975), but that decision only holds that if an employer reimburses employees who eat in restaurants for the cost of their meals, it must reimburse employees who bring their lunches from home for their cost. As the General Counsel's representative admitted at oral argument, it would be a "fair assumption" that the employees could affect prices by not buying.

The General Counsel argues that if this court does not believe that the First and Fourth Circuit cases can be meaningfully distinguished, it should decline to follow them and follow dicta in *Inland Steel, supra.* In *Inland Steel* this court listed some of the items from the parties' contract concerning which they had bargained. One of these items was "a provision for in-plant feeding." 170 F.2d at 251. The court later stated that all these items were "conditions of employment." *Id.* The opinion did not indicate the specifics of the provision. The facts concerning alternate eating facilities were not revealed. The issue was neither briefed nor argued to the court. We hold that the First and Fourth Circuit cases, which gave careful consideration to this issue, should be followed rather than the vague dicta in *Inland Steel,* which in any event could mean nothing more than the obvious requirement that a company would have to bargain on some phases of "in-plant feeding," *e. g.,* the period of time for the purpose.

The General Counsel argues that disputes left outside the framework of collective bargaining can fester and break out in economic warfare. This overlooks controlling decisions interpreting the legislative history of the Act, which hold that Congress decided that matters which are not material and significant should be left off the bargaining table.

This case provides a good example of a situation in which bargaining could be both disruptive of stable employee relations and economically wasteful. If one union has the right to bargain over the prices charged in the vending machines, each has that right. Thus, it is possible that each time the machine owners raised their prices, the Company could be compelled to engage in seven rounds of negotiations. There is nothing in the record to indicate that the labor organizations recognized by the Company have ever engaged in joint bargaining. If an agreement were reached, it would not be enforceable because the Company does not set the prices. At best the Company could only agree to negotiate with the com-

panies which own the machines. As the Fourth Circuit stated in *Westinghouse,* "the purpose of collective bargaining is to produce an agreement and not merely to engage in talk for the sake of going through the motions." 387 F.2d at 550.

We recognize that the classification of bargaining subjects as terms and conditions of employment is a matter concerning which the Board has special expertise. Nevertheless, this case depends on the application of law to facts, and the legal standard to be applied is ultimately for the courts to decide and enforce. *Allied Chemical Workers v. Pittsburgh Plate Co.,* 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971). We hold that vending machine food prices are not a material or significant condition of employment at Ladish. The impact of these prices is too remote to require bargaining.

ENFORCEMENT DENIED.