# United States Court of Appeals
## For the First Circuit

No. 00-1421

POSADAS DE PUERTO RICO ASSOCIATES, INC.,

Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD,

Respondent.

ON PETITION FOR REVIEW AND CROSS-APPLICATION FOR
ENFORCEMENT OF AN ORDER OF THE NATIONAL LABOR RELATIONS BOARD

Before

Lynch and Lipez, <u>Circuit Judges</u>,
Garcia-Gregory,* <u>District Judge</u>.

<u>Edwin J. Seda-Fernandez</u>, with whom <u>Marshal D. Morgan</u>, and <u>Adsuar Muñiz Goyco & Besosa, P.S.C.</u> were on brief, for petitioner.
<u>Joan E. Hoyte</u>, with whom <u>Leonard R. Page</u>, General Counsel, <u>Aileen A. Armstrong</u>, Deputy Associate General Counsel, <u>Frederick C. Havard</u>, Supervisory Attorney, and <u>Bridget O'Connor</u>, Attorney, <u>National Labor Relations Board</u> were on brief, for respondent.

March 23, 2001

---

*      Of the District of Puerto Rico, sitting by designation.

**GARCIA-GREGORY, District Judge**.  The General Counsel of the National Labor Relations Board brought an unfair labor practice charge against Posadas de Puerto Rico Associates, Inc. for having unilaterally discontinued certain group insurance policies it had obtained for its employees. Posadas now petitions this Court for review of a decision and order in which the Board concluded that Posadas had committed an unfair labor practice.  The General Counsel has, in turn, cross-petitioned to enforce the order.  The Board found that Posadas engaged in an unfair labor practice in violation of sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and (5), when it unilaterally discontinued a group cancer and life insurance policy that had been in effect for 20 years without first bargaining to impasse with the Union. Because the Board's order is supported by substantial evidence on the record as a whole, we deny Posadas's petition for review, and grant the Board's cross-petition to enforce its order.

## I.  BACKGROUND

Posadas operates the Condado Plaza Hotel and Casino, a hotel in San Juan, Puerto Rico.  Some of the casino employees are represented by the Asociación de Empleados de Casino (the "Union").  In April 1978, Posadas took out a cancer and life insurance policy with Maccabees Mutual Life Insurance Company to enable its employees to obtain life

and cancer insurance at group rates.[1] For almost 20 years, Posadas made payroll deductions from its unit employees' paychecks to cover premium payments, and remitted the total amount to Maccabees and to the other insurance companies.

On April 14, 1998, Posadas notified the insurance companies that it would no longer make payroll deductions for the life and cancer policy premiums as of May 1, 1998, and asked the companies to "make the necessary arrangements to invoice the employees directly." The next day, April 15, 1998, Posadas notified its employees of the decision. Shortly thereafter, Union president Victor Villalba contacted Eddie Ortiz, Posadas's personnel director, to discuss the matter and explore plausible alternatives. Ortiz replied that the matter was out of his hands, and told Villalba that the decision to discontinue the group policies had been made "higher up."

On April 22, 1998, a week after Posadas notified its employees about the decision, Kenneth S. Krans of Adolfo Krans Associates, Inc., a general insurance agency representing several of the insurance companies that extended group coverage to Posadas, wrote a letter replying to Posadas's April 14, 1998 letter. Krans stated

---

[1] In addition to its policy with Maccabees, Posadas made similar arrangements with various other insurance companies to provide its employees additional options for obtaining life and cancer insurance at group rates. As with the Maccabees policy, Posadas would deduct the premium amounts from its covered employees' paychecks and remit the total amount to the insurance companies.

that the then-existing group coverage was provided through a "'bonafide' group contract," and added that such a contract "was applied for and issued under the representation that it was an employer-paid benefit." Krans further stated that his company had no knowledge about any internal agreement between Posadas and its employees regarding payment of the policy premiums.

Krans told Posadas that his company could arrange for individual coverage as of May 1, 1998, but warned that such a change would not be as simple as Posadas might have believed, given that the employees previously covered under the group policy would now be subject to "individual insurability and rates." Krans suggested that Posadas extend the policy cancellation date to allow covered employees sufficient time to secure individual coverage. Posadas declined to follow Krans's suggestion, however, and discontinued its withholding practice -- and thereby cancelled all group cancer and life insurance policies -- effective May 1, 1998.

The Union filed an unfair labor practice charge, and the Board's General Counsel filed a complaint against Posadas shortly thereafter. On May 5, 1999, the Administrative Law Judge found that Posadas's actions constituted an unfair labor practice in violation of sections 8(a)(1) and (5) of the Act, and ordered Posadas to resume, upon written request from the Union, its past practice of making payroll deductions for the group cancer and life insurance policies, to

-4-

use best efforts to restore those policies, and to make Union employees whole for any losses incurred as a result of the unilateral change. Both the General Counsel and Posadas filed exceptions to the ALJ's findings and conclusions.

On February 25, 2000, the Board upheld the ALJ's findings and conclusion that Posadas had violated sections 8(a)(1) and (5) by unilaterally terminating the payroll deductions for the insurance premiums for the group life and cancer insurance policies without bargaining with the Union over the change. The Board modified the remedies decreed by the ALJ and ordered Posadas to restore the *status quo ante* by resuming its past practice of making payroll deductions for the group cancer and life insurance policies, restoring the policies for previously covered unit employees, and making the employees whole for any losses they may have suffered as a result of the unilateral change. Additionally, the Board ordered Posadas to bargain with the Union in the future over any changes in the group cancer and life insurance policies that affect unit employees.

## II. **STANDARD OF REVIEW**

We review the Board's conclusion of law *de novo*, NLRB v. Beverly Enterprise-Massachusetts, Inc., 174 F.3d 13, 21 (1st Cir. 1999), and take the Board's findings of fact to be "conclusive if supported by substantial evidence on the record considered as a whole." Id.; see also 29 U.S.C. § 160(e). Substantial evidence is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Beverly Entreprise-Massachusetts, 174 F.3d at 21. Moreover, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Id. "In particular, the credibility determinations of the Administrative Law Judge [ ] who heard and saw the witnesses are entitled to great weight." NLRB v. Hospital San Pablo, Inc., 207 F.3d 67, 70 (1st Cir. 2000) (internal quotation marks and citations omitted).

## III. DISCUSSION

An employer commits an unfair labor practice "if, without bargaining to impasse, it effects a unilateral change in an existing term or condition of employment." Visiting Nurse Servs. v. NLRB, 177 F.3d 52, 57 (1st Cir. 1999), cert. denied, 120 S.Ct. 787 (2000); Litton Financial Printing Div. v. NLRB, 501 U.S. 190, 198 (1991). The Board has "the primary responsibility of marking out the scope of the statutory language and of the statutory duty to bargain." Ford Motor Co. v. NLRB, 441 U.S. 488, 496 (1979). Particularly with respect to determinations that fall within the Board's "special expertise," such as whether an issue is a mandatory subject of bargaining, the Board is entitled to "considerable deference," and its determination must be upheld if reasonable and consistent with the policies of the Act. Id.

at 497; <u>see also</u> <u>Beverly Enterprises-Massachusetts</u>, 174 F.3d at 26, 29.

We have long held that an insurance benefit is a mandatory subject of bargaining and that unilateral actions regarding such subjects are proscribed by the Act. <u>Allied Chem. & Alkali Workers of Am.</u> v. <u>Pittsburgh Plate Glass Co.</u>, 404 U.S. 157, 159 (1971) (citing <u>W.W. Cross & Co.</u> v. <u>NLRB</u>, 174 F.2d 875, 878 (1st Cir. 1949)). Insurance benefits have been typically regarded as mandatory subjects of bargaining because they provide "direct and immediate economic benefits from the employment relationship," and because they "provide a financial cushion in the event of illness or injury ... at less cost than such a cushion could be obtained through contracts or insurance negotiated individually." <u>W.W. Cross & Co.</u>, 174 F.2d at 878.

Posadas's principal argument is that the withholding practice was neither a benefit nor a term or condition of employment, but rather a mere internal mechanism that it was free to eliminate unilaterally when it so chose. Posadas contends that it was not required to bargain to impasse before making the unilateral change because it did not contribute to the premium payments, but merely collected the premiums and remitted them to the insurance companies. Posadas concedes, as it must, that an insurance benefit is "vital" to employees and is a mandatory subject of bargaining, but argues that the impact of its decision on the group insurance policies was merely incidental.

-7-

Posadas's attempt to frame its actions as having to do only with an internal company mechanism is disingenuous. The record plainly shows that the withholding practice and the group insurance policy were inextricably intertwined. The April 1998 exchange of letters between Posadas and Krans reveals that the unilateral decision that Posadas was contemplating would have had the effect of eliminating the group insurance policy altogether. A corollary of that decision, therefore, would be that previously covered employees would be forced to secure individual coverage at individual policy rates. Thus, by eliminating the withholding practice, Posadas did much more than eliminate an "internal mechanism"; it unilaterally removed a group insurance policy that Posadas's unit employees had been able to avail themselves of for almost twenty years. Given that the decision had the effect of unilaterally changing a long term benefit, Posadas was required to bargain with the Union to impasse. We doubt that Posadas could hide behind an ignorance defense, but, even if it could, such a defense is not supported by the record.

Moreover, the Board found, based on the uncontested testimony offered by Elsie Santana, a Krans employee, that group policies were considerably less expensive than individual policies. Accordingly, Posadas's longstanding practice of withholding and remitting premiums allowed covered employees to obtain group coverage at rates significantly below what they could have obtained individually. Such

a benefit existed regardless of whether Posadas itself contributed to the premium payments.

Posadas's reliance on Seattle First National Bank v. NLRB, 444 F.2d 30 (9th Cir. 1971), McCall Corp. v. NLRB, 432 F.2d 187 (4th Cir. 1970), and Westinghouse Elec. Corp. v. NLRB, 387 F.2d 542 (4th Cir. 1967) for the proposition that its unilateral action did not impinge on an issue traditionally considered "vital" to employees is unavailing. None of these cases even remotely suggests that an employer can unilaterally eliminate a benefit (insurance-related or otherwise) without bargaining with the Union, by claiming that it actually intended to undertake an unrelated, internal administrative action that happened to cause an adverse effect on the benefit at issue. In Seattle First National Bank, for example, the Ninth Circuit specifically noted (pointing to our opinion in W.W. Cross Co., supra) that group insurance plans involve issues traditionally considered "vital" to employees, as opposed to bank services, the putative benefit at issue in that case. Seattle First National Bank, 444 F.2d at 35 n.8.

Similarly, McCall and Westinghouse involved minor food price increases -- issues quite different from those presented here. In both cases, the employees had alternative places to eat, or they could bring their own lunches; in neither instance were the cafeteria plants so isolated that employees were dependent on the food that caused the

controversies. Although the Fourth Circuit held that such issues were not required subjects for bargaining, none of the actions complained of in either case impinged (directly or indirectly) on a traditionally "vital" issue, such as insurance benefits. Westinghouse, 387 F.2d at 550; McCall, 432 F.2d at 188.

Posadas further contends (again focusing solely on the withholding practice) that its unilateral action was not one traditionally considered "vital" because unit employees "could have maintained the life and cancer insurance policies by simply making the premium payments themselves . . . ." Posadas Brief at 11. The record provides no support for that proposition. To the contrary, Krans's April 22, 1998 letter, stating that the cancellation of the policy would subject covered employees to "individual *insurability* and rates" (emphasis supplied), suggests precisely the opposite. Indeed, the record shows that the employees could not have maintained the same coverage at the same cost – even assuming they were individually insurable – by making the premium payments themselves.

None of Posadas's remaining arguments calls for a contrary conclusion. Posadas contends, for example, that its employees could have maintained their coverage by making premium payments directly to the insurance companies. The record shows, however, that Posadas's employees could not have maintained the same level of coverage by paying the premiums themselves; any coverage after May 1, 1998, would

-10-

have been subject to individual rates, and would therefore have been more expensive.[2] Posadas also contends that its withholding practice was not a term and condition of employment because it was not embodied in the collective bargaining agreement with the Union. The argument is meritless. An item that is not addressed in a collective bargaining agreement can become a term and condition of employment, and hence a mandatory subject of bargaining, if it has been "satisfactorily established" by past practice or custom. See, e.g., Exxon Shipping Co., 291 NLRB 489, 493 (1988). Here, we have a practice that was carried out for almost twenty years, resulting in substantial reliance by Posadas's unit employees. As the Board noted, it is that longstanding history -- coupled with the nature of the benefit at issue -- that transformed this practice into a term or condition of employment. As such, Posadas was required to bargain to impasse.

We need go no further. The record amply supports the Board's conclusion that Posadas provided its unit employees with an insurance benefit, and that, as a result, it was not free to eliminate that benefit unilaterally without offering the Union the opportunity to bargain concerning that change. Posadas's unilateral actions

---

[2] There is a dispute regarding whether unit employees could have continued to receive group rates had they transferred over within a specific grace period provided by the insurance companies. Even assuming *arguendo* that this alternative solution was available, Posadas's argument ignores the fact that its own actions created the problem of which it now complains.

effectively eliminated the group policy and left previously-covered employees without a critically important benefit. Posadas's past practice of withholding premium payments was a term and condition of employment that triggered the duty to bargain. Its failure to do so constituted an unfair labor practice.

Lastly, Posadas argues that the remedy imposed by the Board constituted an abuse of discretion. It is well-settled that the Board has "the primary responsibility and broad discretion to devise remedies that effectuate the policies of the Act," and that discretion is "subject only to limited judicial review." Pegasus Broadcasting of San Juan v. NLRB, 82 F.3d 511, 513 (1st Cir. 1996). Pursuant to its authority under 29 U.S.C. § 160(c), the Board ordered a remedy directing Posadas to, *inter alia*, (1) resume its practice of making payroll deductions for group cancer and life insurance policies, (2) restore the policies for previously covered unit employees, and (3) make the employees whole for any losses they may have suffered as a result of the unilateral change. We have consistently maintained that a Board-ordered remedy "should stand unless it can be shown that [it] is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." Id. (*quoting* Virginia Elec. & Power Co. v. NLRB, 319 U.S. 533, 540 (1943)).

The Board acted within its sound discretion in ordering the restoration of the status quo. Had it not been for Posadas's

unilateral alteration of the terms and condition of employment, the covered employees would have continued to enjoy the benefit of life and cancer insurance at group rates.  Posadas's proposed remedy -- to bargain over the resumption of payroll deductions, which Posadas had no right to eliminate unilaterally -- would effectively place the unit employees "behind the line of scrimmage."  Id. at 514.  There is no reason to disturb the remedy ordered by the Board.

## IV.  CONCLUSION

For the foregoing reasons, we deny Posadas's petition for review and grant the Board's cross-petition to enforce its order.