NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

MILLER BREWING COMPANY, Respondent.

No. 22698.

United States Court of Appeals Ninth Circuit.

Feb. 20, 1969.

---

* Sitting on the Court of Appeals by designation.

John D. Burgoyne (argued), Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, David C. Nevins, Washington, D. C., Paul A. Cassady, Director, NLRB, Los Angeles, Cal., for petitioner.

Willard Z. Carr, Jr. (argued) of Gibson, Dunn & Crutcher, Los Angeles, Cal., for respondent.

Before BARNES and ELY, Circuit Judges, and PREGERSON,* District Judge.

BARNES, Circuit Judge:

In this petition for enforcement, the National Labor Relations Board seeks affirmance of its approval of the trial examiner's order finding that respondent Miller Brewing Company was guilty of an unfair labor practice because it refused a union request to negotiate plant rules published by respondent.

Miller Brewing Company is one of seven members of the California Brewers Association (hereafter Association), a multi-employer bargaining unit. Respondent joined Association in May of 1966 when it acquired a California brewery belonging to a member. At that time, respondent signed the existing labor agreement which like all previous contracts made no provision for issuance of plant rules. (R. at 22.)

Shortly after it began operating its California plant, respondent, without notice to any union representing plant employees, published in booklet form what it characterized as "plant rules" which included both safety rules and general regulations. Similar rules had been put into effect at other member companies without union consultation. (R. at 78.) The complaining union, the International Association of Machinists and Aerospace Workers (hereafter Union) then requested that the rules and the accompanying enforcement machinery be negotiated. The plant manager declined this request on the ground that respondent had the right to issue rules unilaterally. When respondent did not acknowledge a letter making the same demand, Union filed charges of an unfair labor practice. No demand concerning the rules was made on Association by Union before the Board's order or after the order during contract negotiations between Union and Association, a fact respondent offered (unsuccessfully) to place in the record.

Respondent produced testimony to show that it has always been willing to discuss the meaning and application of the rules. (R. at 26.) No other union has objected to the issuance of the rules. (R. at 62.)

The hearing examiner and the Board found that by refusing to bargain, respondent violated section 8(a) (5) and (1) of the National Labor Relations Act and ordered respondent to negotiate the rules. Our authority to review the Board's decision comes from 29 U.S.C. § 151.

Respondent correctly concedes that the issuance of new plant rules is a proper matter for negotiation under the "condition of employment" clause of section 8(d). That phrase is

"sufficiently broad to include safety rules and practices which are undoubtedly conditions of employment and * * * requires good faith bargaining as a mutual obligation of the employer and the Union in connection with such matters." NLRB v. Gulf Power Co., 384 F.2d 822, 825 (5th Cir. 1957). See Fibreboard Paper Prod. Corp. v. NLRB, 379 U.S. 203, 222, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964), Mr. Justice Stewart concurring.

Appellant argues that in the context of the present problem this legal truism is irrelevant for five reasons. (1) The union presented its request to bargain to *the wrong party*; the demand upon respondent was improper because of respondent's membership in Association. (2) Respondent contends that Union's past actions constitute a *waiver* of any right it had to bargain about plant rules. (3) Respondent suggests that Union had no right to negotiations because the rules issued are no more than a codification of regulations already in force. (4) Additionally respondent alleges both that the arbitration procedures previously agreed upon by the parties were the proper method of settling the problem, and (5) that the Board erred by refusing to reopen the record to admit evidence show-

---

* Hon. Harry Pregerson, United States District Judge, Los Angeles, California, sitting by designation.

ing that Union did not raise the issue of plant rules during contract negotiations. Finding no merit in respondent's arguments, we affirm the decision of the Board and order it enforced.

██ I. We reject respondent's first allegation, that Union should have presented its demand to Association as the industry-wide bargaining agent.[1] While multi-employer bargaining units are conducive to industrial peace and are favored by national policy, e. g., Detroit Newspaper Publishers Ass'n v. NLRB, 372 F.2d 569, 576 (6th Cir. 1967), this preference is not incompatible with union negotiations with an individual member of an association on matters unique to that member. Examination of the record reveals that from time to time other members of Association have issued plant rules without acting through the Association. Past conduct by members is significant because these problems are solved on a case by case basis; an analysis of "accepted flexibility in the format of bargaining" helps to reveal whether a practice that is not intrinsically unacceptable—individual negotiation—will be denominated an unfair labor practice. Retail Clerks Local 1550 v. NLRB, 330 F.2d 210, 216 (D.C.Cir.1964). In our judgment, the issuance of plant rules by individual employers indicates that these other members did not consider their promulgation to be a function of Association. If the company did not desire to bargain through the Association because the rules were local matter, it should not *later* refuse to bargain individually. Additionally, the fact that there has been no showing that this conduct weakened or disrupted the Association vitiates what would otherwise be an insurmountable obstacle to this practice. In any event, respondent could, of course, be represented in its negotiation with Union by Association, under section 8(b) (1) (B)

of the Act. Since this is the case, respondent can informally obtain the same result and respect the same policy goals it alleges will be hampered by its individual negotiation with Union. Our consideration of respondent's argument on this point convinces us that it lacks merit and logic; we cannot accept it.

 II. Respondent next contends that because Union failed to object to the previous unilateral issuance of plant rules by other employers and because of the clause in the collective bargaining agreement allowing discharge for "cause," it has waived any right to now request negotiations. The first part of this argument is unconvincing because it is not true that a right once waived under the Act is lost forever. Pacific Coast Ass'n of Pulp & Paper Mfrs. v. NLRB, 304 F.2d 760 (9th Cir. 1962). Each time the bargainable incident occurs—each time new rules are issued—Union has the election of requesting negotiations or not. An opportunity once rejected does not result in a permanent "close-out;" as in contract law, an offer once declined but then remade can be subsequently accepted. Cf. Leeds & Northrup Co. v. NLRB, 391 F.2d 874 (3d Cir. 1968); General Tel. Co. v. NLRB, 337 F.2d 452 (5th Cir. 1964).

██ While the "just cause" provision is relevant to a discharge penalty, it has no bearing on less severe punishment. See discussion *infra*. For this reason, it cannot be considered an across-the-board waiver of the type respondent must demonstrate.

██ III. Respondent argues that the rules Union wishes to negotiate are those already known and in force at the time of publication. While there is a substantial overlap in the two sets (R. at 32, 36, 41, 51), at least *two* of the later rules (no right to refuse overtime and no collections allowed in the plant) were new, and

---

1. As a matter of equity, respondent's argument would carry more weight had it been made initially to Union at the time the request for negotiations was made and not first presented at the proceedings before the hearing examiner. While

respondent's allegation that there is no positive obligation for it to direct Union to try another avenue may be true, its reticence certainly is not in harmony with the spirit and purpose of the Act.

the enforcement machinery was a complete innovation. While respondent had the right to fire for "just cause," *supra,* the other sanctions imposed for violation of the rules were unknown before the contested issuance. (R. at 41, 49.) For this reason, we cannot accept a justification of the rules based on their being a mere codification. The "condition of employment" was modified by the rules, and unless otherwise excused, respondent is required to negotiate "changes."

■ IV. Respondent's claim that arbitration, not the filing of a complaint with the Board, was the proper course of action for Union is not compatible with either the language of the Act, section 10(a), which provides that the Board can exercise its jurisdiction despite the existence of arbitration machinery, or the factual situation of the present problem. Respondent's presentation reveals that not all of respondent's objections relate to the contract. Arguably, objections to negotiation could be made by respondent even after arbitration and resort to the Board would still be necessary. It was not, therefore, improper for the Board to exercise its jurisdiction. See, generally, NLRB v. Acme Indus. Co., 385 U.S. 432, 85 S.Ct. 565, 17 L.Ed.2d 495 (1967).

■ V. We find the Board was also correct in declining to reopen the record to admit evidence showing that Union did not ask Association to discuss plant rules at the contract negotiations following the issuance of the Board's order. Respondent's argument was that Union's inaction constituted a waiver of any right it had to bargain over the rules. The Board denied respondent's motion as "lacking in merit." We agree. As a result of the Board's order, respondent was obligated to negotiate with Union. To preserve this right, it is not necessary for Union to explore an alternative approach (especially since respondent did not suggest this possibility). Union had no reason to think and respondent gave Union no cause to believe that respondent would be responsive to a request for negotiations through Association. We know of no theory of waiver which requires the do-

ing of a futile act to preserve a right not dependent on and only tangentially related to the act. Even had respondent offered and Union declined to negotiate through Association, the order of the Board would not have been vitiated or rendered moot. Jaycox Sanitary Serv., Inc., 161 N.L.R.B. 544 (1966); Columbia Beverage Co., 138 N.L.R.B. 1297 (1962).

Finding no merit in the arguments presented by respondent to justify its refusal to negotiate the plant rules, we order the decision of the Board enforced.