Opinion
 

 THOMPSON, J.
 

 This appeal from a judgment of dismissal after a demurrer was sustained without leave to amend tests the scope of the “meet and confer” obligation imposed upon public agencies by the Meyers-Milias-Brown Act. (Gov. Code, § 3500 et seq.) Specifically, we are required to determine whether a charge for employee parking supplied by the agency is included within the definition of “wages, hours, and other terms and conditions of employment” so as to require the “meet and confer” process where: (1) agency-supplied parking is available only to “a minority” of employees; (2) employees are not required to utilize agency-supplied parking but may reasonably use methods other than automobile transportation or other available parking;
 
 *501
 
 and (3) the agency action involves raising the monthly parking fee from $2.50 to $4 in some cases, and from $3.50 to $4 in others.
 

 Finding no California precedent in point, we turn to cases interpreting the National Labor Relations Act which the Meyers-Milias-Brown Act parallels.
 
 (Fire Fighters Union
 
 v.
 
 City of Vallejo
 
 (1974) 12 Cal.3d 608, 615-617 [116 Cal.Rptr. 507, 526 P.2d 971].) We note a disagreement between decisions of the National Labor Relations Board, which employs a broad definition of “wages, hours, and other terms and conditions of employment” so as to encompass within the phrase minor changes in benefits made available to a minority of employees at their option where other options exist, and decisions of the federal courts of appeals, which apply a narrower definition so as to exclude those changes from the bargaining requirements of the National Labor Relations Act. Because our analysis reveals that the reasoning of the federal judicial decisions is more persuasive than that of the federal administrative agency, we follow the judicial determinations. Accordingly, we affirm the judgment of the trial court.
 

 Facts
 

 The procedural posture of the case at bench dictates the facts to be considered on appeal. The trial court offered appellant-plaintiff the opportunity to amend when the court indicated that it would sustain the demurrer of defendants. Plaintiff declined the offer and elected to stand on its complaint. Accordingly, we hold plaintiff to the allegations of its complaint without considering the manner in which the complaint might be amended to state a cause of action.
 
 (Archibald
 
 v.
 
 Cinerama Hawaiian Hotels, Inc.
 
 (1977) 73 Cal.App.3d 152, 155-156 [140 Cal.Rptr. 599].) We treat the allegations of fact in the complaint as true except where those allegations purport to characterize exhibits incorporated in the pleading. In the latter instance, we treat the exhibit as controlling. We ignore allegations of conclusions of law.
 

 Plaintiff Social Services Union, Local 535 is the employee organization representing “human services” and “mental health” employees of the defendant County of Santa Barbara. From 1971 through 1975, “employee parking” for persons represented by Local 535 had been “an included subject in meet and confer sessions” of the local and the county. Effective July 1, 1976, the county and local entered into a memorandum of understanding (MOU). The 1976 MOU states that the county and local
 
 *502
 
 agree that there will be no changes in “wage rates, benefits and other terms and conditions of employment” except by mutual agreement of the parties. It states also that the county will notify the local of any proposed changes in rules, regulations, ordinances or resolutions “which are beyond the scope of the meet and confer process, but the practical application of which directly affects employees represented by the Union.” As to matters of that sort, the county agreed to “meet and consult” with the local upon its request.
 

 In the first part of 1976, the county’s board of supervisors directed its administrative officer to study the subject of employee parking fees and to report on: (1) whether to charge employees parking in the county’s Lompoc parking lot the same amount as those parking in its Santa Barbara lot; (2) an analysis of the current “rental rate” in Santa Barbara; and (3) whether the county should pay for employee parking. On August 19, 1976, the county administrative officer filed his report with the board. The report notes a shortage of 211 “reserved” parking spaces for employees and states that cost considerations render unfeasible the construction or acquisition of more spaces. It states that a guaranteed parking space is “enjoyed by a minority of employees” and that fees at some of the lots would cause them to “empty” because the employees would use on-street parking. The report recommends that the then existing fee of $3.50 per month at the “Administrative Building” and the $2.50 per month fee at the “Garden Street lot” be raised to a uniform $4 per month “to be adjusted annually to the overall salary increase.”
 

 The report schedules preliminary steps to its implementation, including a “meet and confer session.”
 

 Having been advised by the county counsel that “this is not a meet and confer item,” the board of supervisors of the county, on September 7, 1976, adopted a resolution calling for a uniform charge of $4 per month for all employee reserved parking spaces. On October 13, the local wrote to the administrative officer stating that the unilateral raise in parking fees violated the portion of the MOU relating to changes in “wage rates, benefits, or other terms and conditions of employment subject to the meet and confer process,” and demanding that the increase in fees be rescinded and arrangements made “to meet and confer.” The board refused the demand.
 

 
 *503
 
 The local then filed the complaint which commenced the case at bench. The complaint asserts a violation of the “meet and confer” requirement only as to increases in existing parking fees. The pleading seeks mandate to compel the supervisors to meet and confer on the issue with the local and injunctive relief enjoining the county from carrying the newly adopted parking charges into effect.
 

 Arguing that the increase in parking fees was not a subject directly related to “wage rates, benefits, or other terms and conditions of employment,” the county filed a demurrer to the complaint. The trial court sustained the demurrer. The local having declined an invitation to amend its pleadings, the demurrer was sustained without leave to amend, and the action was dismissed.
 

 Contentions
 

 In this appeal, the local contends that the adoption of the increase in parking fees without a prior “meet and confer” session violated the requirements of Government Code section 3505 requiring such a session before a change in wages or benefits and section 3504.5 requiring notice to the representative employee organization before the adoption of any ordinance, rule, or regulation “directly relating to matters” concerned with other “employment conditions and employer-employee relations.” (Gov. Code, § 3504.) Inferentially, the local contends that the increase in parking fees violates the MOU.
 

 Meet and Confer Requirement
 

 Government Code section 3505 states: “The governing body of a public agency . . . shall meet and confer in good faith regarding wages, hours, and other terms and conditions of employment with representatives of. . . recognized employee organizations. . . .”
 

 Our Supreme Court rejects the proposition that “ ‘wages, hours and working conditions’ ” should be so “broadly read . . . [as to] . . . encompass practically any conceivable bargaining proposal . . . .”
 
 (Fire Fighters Union
 
 v.
 
 City of Vallejo, supra, 12
 
 Cal.3d at p. 615.)
 

 The California high court finds a legislative intent in sections 3504 and 3505 “not to restrict bargaining on matters directly affecting employees’ legitimate interests in wages, hours and working conditions . . . .”
 
 (Id,
 
 at
 
 *504
 
 p. 616.) It turns to federal precedent construing similar language in the National Labor Relations Act to determine the scope of matters directly affecting employees’ legitimate interest in these items.
 
 (Id.,
 
 at pp. 615-616.)
 

 Neither the research of counsel for the parties nor our own effort has disclosed California precedent dealing with the treatment of small charges to employees for agency-supplied services available only to a minority of employees at the option of the employee as a benefit subject to meet and confer requirements. Therefore, following the lead of the California Supreme Court, we turn to federal precedent.
 

 That precedent is not consistent.
 

 The National Labor Relations Board gives the term “wages, hours and working conditions” a broad sweep and hence requires an employer to bargain with a union on such items as prices charged in food vending machines operated or authorized by the employer
 
 (Ford Motor Company
 
 (1977) 230 NLRB 101; see also
 
 Weyerhaeuser Timber Company
 
 (1949) 87 NLRB 672), and the scheduling of coffee breaks and the providing of free coffee by the employer
 
 (Fleming Manufacturing Company, Inc.
 
 (1967) 119 NLRB 452).
 

 Federal courts apply a narrower meaning to the phrase. It “is to be interpreted in a limited sense which does not include every issue that might be of interest to unions or employers .... In order for a matter to be subject to mandatory collective bargaining it must
 
 materially
 
 or
 
 significantly
 
 affect the terms or conditions of employment.”
 
 (Seattle First National Bank
 
 v.
 
 N.L.R.B.
 
 (9th Cir. 1971) 444 F.2d 30, 32-33; italics in original.) The phrase does not encompass all “ ‘emoluments] of value’ accruing out of the employment relationship and . . . not
 
 de minimus.” (Id.,
 
 at p. 33.)
 

 In the federal courts, materiality or significance of an employer-provided service to employees where the service is optional with the employee is determined by the presence or absence of such facts as: the extent to which the service materially affects the employees’ living conditions
 
 (National Labor Rel. Bd.
 
 v.
 
 Lehigh Portland Cement Co.
 
 (4th Cir. 1953) 205 F.2d 821, 823); the presence or absence of feasible alternatives to the employer-provided service available to the employees
 
 (National Labor Relations Bd.
 
 v.
 
 Bemis Bro. Bag Co.
 
 (5th Cir. 1953) 206
 
 *505
 
 F.2d 33, 37-38;
 
 American Smelting and Refining Company
 
 v.
 
 N.L.R.B.
 
 (9th Cir. 1969) 406 F.2d 552, 554-555;
 
 N.L.R.B.
 
 v.
 
 Package Machinery Company
 
 (1st Cir. 1972) 457 F.2d 936, 937-938); the value of the employer-provided service
 
 (National Labor Rel. Bd.
 
 v.
 
 Lehigh Portland Cement Co., supra,
 
 205 F.2d at p. 823); and the extent to which the employer-provided service has been presented by the employer as an alternative to cash compensation
 
 (N.L.R.B.
 
 v.
 
 Central Illinois Public Service Company
 
 (7th Cir. 1963) 324 F.2d 916, 917, 919.)
 

 Unlike the National Labor Relations Board, the federal court construes the statutory requirement for bargaining over wages, hours, and working conditions inferring a legislative intent not to require bargaining where a matter is only indirectly related to wages and hours, and the transactional cost of the bargaining process outweighs its value. (N.L.R.B. v.
 
 Ladish Co.
 
 (7th Cir. 1976) 538 F.2d 1267, 1272;
 
 Westinghouse Electric Corporation
 
 v.
 
 N.L.R.B.
 
 (4th Cir. 1967) 387 F.2d 542, 550.)
 

 Applying the stricter standard, the federal judicial decisions are contrary to those of the National Labor Relations Board and exempt from collective bargaining such items as the amount charged for food and beverages in employer-operated cafeterias and vending machines where the employees have a feasible alternative source of the food and drink.
 
 (Westinghouse Electric Corporation
 
 v.
 
 N.L.R.B., supra,
 
 387 F.2d at pp. 548-549;
 
 McCall Corporation
 
 v.
 
 N.L.R.B.
 
 (4th Cir. 1970) 432 F.2d 187, 188;
 
 N.L.R.B.
 
 v.
 
 Package Machinery Company, supra,
 
 457 F.2d at pp. 937-938;
 
 N.L.R.B.
 
 v.
 
 Ladish Co., supra,
 
 538 F.2d at p. 1271.) The federal courts similarly do not require collective bargaining with respect to rent charged for employer-supplied housing where alternative housing is reasonably available. (Compare
 
 National Labor Relations Bd.
 
 v.
 
 Bemis Bro. Bag Co., supra,
 
 206 F.2d at p. 37 with
 
 American Smelting and Refining Company
 
 v.
 
 N.L.R.B., supra,
 
 406 F.2d at pp. 554-555.)
 

 We view the approach of the federal courts to be more persuasive than that utilized by the N.L.R.B. If nothing else, the failure of the administrative agency to recognize. that the Congress could not have intended to require collective bargaining over indirect fringe benefits in situations where the value to be derived from it is outweighed by the cost of the bargaining process casts doubt upon the validity of the N.L.RB.’s determination. The balancing process is particularly pertinent in the case of public employees. Industry may be able to absorb the cost of bargaining in what would otherwise be profit. In the case of public
 
 *506
 
 entities, that which is expended in the costs of bargaining on insubstantial items is not available to pay direct employee wages and benefits.
 

 We thus conclude that the legal test to be applied to the case at bench is that adopted by the federal courts and not the more liberal test applied by the National Labor Relations Board. The judicial test supports the trial court’s ruling that the parking fees are not properly subject to the “meet and confer” procedure. Parking in the county-supplied facilities is optional with the employees. The complaint does not allege that alternative means of parking are not reasonably available. In no way does the allegation that parking fees have been increased 50 cents a month in some instances and $1.50 per month in others support an inference that the increased burden upon the county’s employees represented by the local will materially affect the employees’ living conditions. There is no direct allegation in the complaint that the employee parking is of substantial monetary value to the employees. The small amounts involved do not support an inference of substantial monetary value absent a factual allegation of the cost, if any, of alternative parking. While the complaint does allege that “[bjetween 1971 and 1975, proposals relating to the subject of paid employee parking . . . have been an included subject in meet and confer sessions,” it does not assert that parking fees were included within discussions on the subject as an item of compensation or even that the subject remained one of discussion with respect to the 1976 MOU.
 

 In sum, applying the criteria used by the federal courts in the parallel situation of the National Labor Relations Act, Government Code section 3505’s requirement that the public agency and union representing its employees meet and confer with respect to “wages, hours, and other terms and conditions of employment” does not extend to items of an insubstantial nature only indirectly affecting the employment relationship. The parking fees involved in the case at bench are such an item.
 

 Government Code Sections 3504 and 3504.5
 

 Section 3504 of the Government Code states that the scope of employee representation by employee unions includes: “all matters relating to employment conditions and employer-employee relations, including, but not limited to, wages, hours, and other terms and conditions of employment . . . .” Section 3504.5 of that code requires “reasonable written notice” by the public agency to the employee
 
 *507
 
 organization of proposed action on “matters within the scope of representation” and that the agency “shall give such recognized employee organization the opportunity to meet with the governing body [of the agency].”
 

 The local argues that irrespective of any restricted meaning given “wages, hours, and other terms and conditions of employment,” as the phrase is used in section 3505, sections 3504 and 3504.5 must be construed to cover a broader scope of agency action which must be preceded by written notice to the representative union. It contends that the complaint alleges a violation of that requirement.
 

 We do not reach the issue of the construction to be given Government Code sections 3504 and 3504.5. The local did not exhaust its administrative remedy if its construction of the sections is correct. Its sole complaint to the county was a failure to comply with the meet and confer requirements of Government Code section 3505. By not raising the issue, the local precluded the county from reconsidering the item after notice pursuant to Government Code sections 3504 and 3504.5 if those sections require notice.
 

 MOU
 

 Article XXX, subsection (a) of the 1976 memorandum of understanding restates the statutory requirement for meet and confer sessions. In subsection (b), it adds the requirement that: “The County . . . shall notify the Union of any proposed change in County rules, regulations, ordinances or resolutions on subjects which are beyond the scope of the meet and confer process, but the practical application of which directly affects employees represented by the Union. The County agrees to meet and consult with the Union on any such proposals, upon request of the Union.”
 

 The local now asserts that the complaint alleges facts establishing a violation of subsection (b) of article XXX of the MOU. That contention is not available to the local in this appeal. The local did not assert a violation of subsection (b) when it wrote objecting to the county’s action on parking fees. Rather, it limited its objection to a claimed violation of the requirement that the county meet and confer on “wage rates, benefits, or other terms and conditions of employment subject to the meet and confer process.”
 

 
 *508
 

 Disposition
 

 The judgment is affirmed.
 

 Lillie, Acting P. J., and Hanson, J., concurred.
 

 Appellant’s petition for a hearing by the Supreme Court was denied August 24, 1978.