[Civ. No. 51780. First Dist., Div. Three. Aug. 31, 1982.]

SOLANO COUNTY EMPLOYEES' ASSOCIATION, Plaintiff and Respondent, v.
COUNTY OF SOLANO, Defendant and Appellant.

**COUNSEL**

Milton Goldinger, County Counsel, and Billy B. Burton, Chief Deputy County Counsel, for Defendant and Appellant.

John Plotz and Mocine & Plotz for Plaintiff and Respondent.

## OPINION

**FEINBERG, J.**—Solano County (County) appeals from a memorandum of decision[1] granting a writ of mandate requiring the County to meet and confer with respondent Solano County Employees' Association (Union) regarding a rule prohibiting county employees from driving motorcycles on county business. The County argues that this rule is not subject to the meet-and-confer requirement of Government Code section 3505 because: (1) the rule has only an insignificant impact on the conditions of employment; and (2) it is a managerial decision falling within the "merits, necessity, or organization" exception to the Meyers-Milias-Brown Act (Gov. Code, §§ 3500-3510). For the reasons discussed below, the writ of mandate was properly granted.

### FACTS

*Undisputed Facts*

Both parties agree on the following events. On August 10, 1979, the Solano County Administrator issued a memorandum to all county departments, which read in pertinent part: "To preclude any question of whether a vehicle is authorized to be driven on County business in the future, the following policy will apply in all cases. . . . [N]o vehicles other than a 4-wheel passenger type vehicle which the employee has insured . . . will be authorized to be driven on County business. Permission to operate . . . motorcycles . . . on County business must be requested in writing to the County Administrator [and be granted]."

Ray Villanueva, a county employee, sought permission on August 27, 1979, to use his motorcycle on county business. The County refused permission on December 19, 1979. On January 24, 1980, the County refused to process Villanueva's timely grievance on the grounds that it did not constitute a grievance under the County's grievance procedure. Respondent Union, Villanueva's representative, asked the County on January 28, 1980, to meet and confer on the matter. On February 1, 1980, the County refused to meet and confer, claiming that the rule was exempt under the "merits, necessity, or organization" exception

---

[1] A memorandum of decision may be treated as an appealable order or judgment when it constitutes the trial judge's final determination on the merits and is signed and filed. The memorandum decision in the present case meets these criteria. (*Estate of Lock* (1981) 122 Cal.App.3d 892, 896 [176 Cal.Rptr. 358]; *Safeway Stores Inc. v. Brotherhood of Teamsters* (1978) 83 Cal.App.3d 430, 434, fn. 1 [147 Cal.Rptr. 835]; *Martino v. Concord Community Hosp. Dist.* (1965) 233 Cal.App.2d 51, 55 [43 Cal.Rptr. 255].)

(Gov. Code, § 3504) to the Meyers-Milias-Brown Act. The Union filed its petition with the superior court on February 21, 1980.

*Disputed Allegations*

The Union contends that the rule set forth in the August 10 memorandum is a new rule, and has filed the declarations of several county employees that they were unaware of any rule and had openly used their motorcycles on county business without objection for several years. The County responds with its own affidavit that the rule has been in force for at least 15 years, and that the August memorandum was merely a reminder of the policy.

Following an order to show cause, the trial court issued its memorandum of decision granting the writ of mandate, without express findings of fact or law.

### SCOPE OF REPRESENTATION

The scope-of-bargaining provision in section 10a of Solano County's regulations is identical for practical purposes with Government Code section 3504, which reads: "The scope of representation shall include all matters relating to employment conditions and employer-employee relations, including, but not limited to, wages, hours, and other terms and conditions of employment, except, however, that the scope of representation shall not include consideration of the merits, necessity, or organization of any service or activity provided by law or executive order." Therefore, interpretation of the code language necessarily bears upon the meaning of the County rule.

Federal labor legislation has frequently been the model for California labor law, and it is well settled that California courts will look to federal law for guidance in interpreting state statutes whose language parallels that of the federal statutes. (*Social Workers' Union, Local 535* v. *Alameda County Welfare Dept.* (1974) 11 Cal.3d 382, 391 [113 Cal.Rptr. 461, 521 P.2d 453].) The scope-of-representation language of Government Code section 3504 is taken directly from the federal Labor Relations Act (NLRA), and while California's exception for "merits, necessity, or organization" has no direct analogue in the NLRA, the federal courts have incorporated its meaning into their interpretation of "wages, hours, and terms and conditions of employment." (*Fire Fighters Union* v. *City of Vallejo* (1974) 12 Cal.3d 608, 617-618 [116

Cal.Rptr. 507, 526 P.2d 971].) Consequently, federal precedents provide persuasive, though not limiting, authority in the present case. (*Ibid.*; *Social Workers' Union, Local 535, supra,* 11 Cal.3d at p. 391.)

## SAFETY RULES AND MATERIALITY

■ The Union contends that the rule prohibiting use of motorcycles on county business is purely a safety rule. The County admits that "[t]he decision to preclude use of motorcycles obviously contains an aspect of safety . . . ." In common usage, when the word "safety" is used as an adjective it denotes "contribution to or insuring safety; protective" (American Heritage Dict. (1971)). In the context of the California Occupational Safety and Health Act, Labor Code section 6306, subdivision (a) states that the term "'safety' . . . as applied to an employment or place of employment mean[s] such freedom from danger to the life, safety, or health of employees as the nature of the employment reasonably permits." Section 6306, subdivision (b) requires that the terms "safety device" and "safeguard" be given "a broad interpretation so as to include any practicable method of mitigating or preventing a specific danger . . . ." Our Supreme Court has made it clear that section 6306 is "'to be given a liberal interpretation for the purpose of achieving a safe working environment.'" (*Bendix Forest Products Corp.* v. *Division of Occupational Saf. & Health* (1979) 25 Cal.3d 465, 470 [158 Cal.Rptr. 882, 600 P.2d 1339].) In light of these definitions of the term "safety" and the extensive background material presented by the County regarding the relative seriousness of motorcycle injuries and their resulting costs, we can only conclude that the County's rule prohibiting use of motorcycles on the job was intended to be, and is, a safety rule.

The Union further argues that safety rules are a mandatory subject of bargaining, since they concern the terms and conditions of employment. The County admits that "it is recognized that safety practices considered alone may be a subject of meet and confer." Indeed, the cases have uniformly held that safety rules are a mandatory subject of bargaining. (See, e.g., *United Steelworkers of America, etc.* v. *Marshall* (D.C. Cir. 1980) 647 F.2d 1189, 1236, cert. den., 453 U.S. 913 [69 L.Ed.2d 997, 101 S.Ct. 3148]; *Firefighters Union* v. *City of Vallejo, supra,* 12 Cal.3d 608, 620, 623; *N. L. R. B.* v. *Miller Brewing Co.* (9th Cir. 1969) 408 F.2d 12, 14; *N. L. R. B.* v. *Gulf Power Company* (5th Cir. 1967) 384 F.2d 822, 824-825; *Fibreboard Corp.* v. *Labor Board* (1964) 379 U.S. 203, 222 [13 L.Ed.2d 233, 245, 85 S.Ct. 398, 64 A.L.R.3d 1130] (conc. opn. of Stewart, J.).)

However, the County argues that to be a subject of mandatory bargaining, the rule must have more than a "remote, indirect, or incidental impact on work conditions." (See, e.g., *N. L. R. B.* v. *Ladish Co.* (7th Cir. 1976) 538 F.2d 1267, 1270.) The County cites several holdings from the long line of cases requiring that a rule must "materially" or "significantly" affect the terms or conditions of employment,[2] and must affect more than a small number of employees.[3] The County argues that since its rule will have only a minor impact on the very small number of its employees who wish to ride motorcycles on the job, it does not meet the materiality test and therefore is not a meet-and-confer item. The Union's contention that *Ford Motor Co.* v. *N. L. R. B.* (1979) 441 U.S. 488 [60 L.Ed.2d 420, 99 S.Ct. 1842], "effectively overrules" this line of cases and the materiality analysis is not supported by a reading of *Ford*.[4]

Yet the County has not cited, and we have not found, any case applying the materiality analysis to a safety rule.[5] To the contrary, the cases have implied that *all* safety rules are subject to collective bargaining.[6] We believe it is the inherent nature of safety rules that has excluded

---

[2]See, e.g., *Oakland Unified School Dist.* v. *Public Employment Relations Bd.* (1981) 120 Cal.App.3d 1007, 1012 [175 Cal.Rptr. 105]; *Vernon Fire Fighters* v. *City of Vernon* (1980) 107 Cal.App.3d 802, 817 [165 Cal.Rptr. 908]; *Keystone Steel & Wire etc.* v. *N. L. R. B.* (7th Cir. 1979) 606 F.2d 171, 179; *Seattle First National Bank* v. *N. L. R. B.* (9th Cir. 1971) 444 F.2d 30, 32-34; *Westinghouse Electric Corporation* v. *N. L. R. B.* (4th Cir. 1967) 387 F.2d 542, 548.

[3]See, e.g., *N. L. R. B.* v. *Carilli* (9th Cir. 1981) 648 F.2d 1206, 1215; *Amcar Division, ACF Industries, Inc.* v. *N. L. R. B.* (8th Cir. 1979) 592 F.2d 422, 428; *Social Services Union* v. *Board of Supervisors* (1978) 82 Cal.App.3d 498, 501 [147 Cal.Rptr. 126]; *Seattle First National Bank* v. *N. L. R. B.* (9th Cir. 1971) 444 F.2d 30, 34.

[4]The *Ford* court merely held that its "vitally affect" test of *Chemical Workers* v. *Pittsburg Glass* (1971) 404 U.S. 157 [30 L.Ed.2d 341, 92 S.Ct. 383], applies only to matters involving individuals *outside* the employment relationship. The court did not dispense with the materiality analysis, indicating that it would defer to the evaluation of the employees and N.L.R.B. in determining whether a matter is trivial. (*Ford, supra,* 441 U.S., at p. 501 [60 L.Ed.2d at p. 430].)

[5]The County cites *Pacific Diesel Parts Company* (1973) 203 N.L.R.B. 820. The rule in that case, however, only precluded nonemployees from lunching at the plant. It was not an employee safety rule.

[6]"[W]hat safety practices are observed, would . . . seem conditions of one's employment." (*Fibreboard Corp.* v. *Labor Board, supra,* 379 U.S. 203, 222 [13 L.Ed.2d 233, 245] (conc. opn. of Stewart, J.)); "[A]ny issue directly related to worker safety" is a mandatory subject of collective bargaining. (*United Steelworkers of America etc.* v. *Marshall, supra,* 647 F.2d 1189, 1236); "the phrase 'other terms and conditions of employment' . . . is sufficiently broad to include safety rules and practices which are undoubtedly conditions of employment . . . ." (*N. L. R. B.* v. *Gulf Power Company, supra,* 384 F.2d 822, 825.)

them from the materiality analysis of the courts. It is a truism that even small precautions can prevent major mishaps, and it follows that any safety rule, no matter how apparently trivial, could have an important impact on the conditions of employment. Moreover, where human health and safety are involved, a rule should not be slighted simply because it will affect only a few employees. We see no reason to depart from the apparent intent of the cases that all safety issues, regardless of their purported "materiality" or "significance," are mandatory subjects of collective bargaining, or as in this case, of meet and confer.

Finally, the County suggests that a rule in the best interests of its employees should not be subject to meet and confer. We note that just because the traditional role of union and management may be reversed in this case (i.e., the Union expressing concern over the County's implementation of a safety rule), the mandatory nature of meet-and-confer is not changed. Whether a change is beneficial or detrimental to the employees is a decision reserved to the employees as represented by their union. (*American Oil Co.* v. *N. L. R. B.* (8th Cir. 1979) 602 F.2d 184, 187, fn. 3.) Moreover, it is settled that the good faith of the employer does not exempt it from bargaining. (See, e.g., *Alfred M. Lewis, Inc.* v. *N. L. R. B.* (9th Cir. 1978) 587 F.2d 403, 411; *Labor Board* v. *Katz* (1962) 369 U.S. 736, 747 [8 L.Ed.2d 230, 238, 82 S.Ct. 1107].) We emphasize at this point that this court in no way evaluates the merit of the County's rule, but only determines if it is a meet-and-confer item.

## MANAGERIAL PREROGATIVE AND PUBLIC POLICY

The County next argues that a major objective of its motorcycle rule is the reduction of liability exposure and workers' compensation costs. The County also suggests that it has a higher purpose: protection of the public from the threat of motorcycles. The County believes these concerns fall within the exception to the Meyers-Milias-Brown Act for "merits, necessity, or organization." (Gov. Code, § 3504.) Federal and California courts have made it clear that if the need for managerial control is sufficiently great, or if public policy considerations are paramount, such a need or policy can outweigh the employees' right to meet and confer on an otherwise mandatory subject of bargaining. (See, e.g., *First National Maintenance Corp.* v. *N. L. R. B.* (1981) 452 U.S. 666, 678 [69 L.Ed.2d 318, 330, 101 S.Ct. 2573, 2580]; *San Jose Peace Officer's Assn.* v. *City of San Jose* (1978) 78 Cal.App.3d 935, 946 [144 Cal.Rptr. 638]; *N. L. R. B.* v. *Gulf Power Company, supra,* 384 F.2d 822, 824.)

The cases have consistently set a high standard in determining the existence of managerial prerogative or overriding public policy.[7] The federal courts have variously asked whether the disputed subject of bargaining "relates solely to the internal procedures of the employer" (*N. L. R. B.* v. *L. 264, Laborers' Intern. U., etc.* (8th Cir. 1976) 529 F.2d 778, 785); goes to "the core of entrepreneurial control" or is "fundamental to the basic direction of a corporate enterprise . . ." (*Fibreboard Corp.* v. *Labor Board, supra,* 379 U.S. 203, 223, 225 [13 L.Ed.2d 233, 246] (conc. opn. of Stewart, J.)); concerns "major shifts in capital investment or corporate strategy" (*Local 777, Democratic U. Organizing Com.* v. *N. L. R. B.* (D.C. Cir. 1978) 603 F.2d 862, 884); alters "the underlying nature of the business" (*id.,* at p. 885); or if bargaining about the issue would "significantly abridge [the employer's] freedom to manage the business" (*Fibreboard, supra,* 379 U.S. at p. 213 [13 L.Ed.2d at p. 240]).

The California cases have looked at whether the decision is "inextricably interwoven with important policy considerations" (*San Jose Peace Officer's Assn.* v. *City of San Jose, supra,* 78 Cal.App.3d 935, 946); is "primarily a matter of public safety" (*id.,* at p. 947); or if meeting and conferring on the issue would "place an intolerable burden upon fair and efficient administration of state and local government" (*Berkeley Police Assn.* v. *City of Berkeley* (1977) 76 Cal.App.3d 931, 937 [143 Cal.Rptr. 255]).

The County has failed to show a prerogative or policy sufficient to invoke the "merits, necessity, or organization" exception to the meet and confer requirements of Government Code section 3504.

First, even if we accept the County's comparative cost figures as the inevitable result of allowing its employees to use motorcycles on the job,[8] cost alone is not a sufficient basis to exclude a rule from meet and confer. In *Vernon Fire Fighters* v. *City of Vernon, supra,* 107 Cal.App. 3d 802, for example, the city imposed a rule against washing cars as a

---

[7]The California Supreme Court has stated that to promote the peaceful adjudication of disputes, "[w]e . . . must be careful not to restrict unduly the *scope* of the arbitration by an overbroad definition of 'merits, necessity, or organization.'" (*Fire Fighters Union* v. *City of Vallejo, supra,* 12 Cal.3d 608, 615, italics in original.)

[8]We are wary of the County's readiness to analogize the injuries sustained by California Highway Patrol motorcycle officers in the course of their highway traffic control and law enforcement duties, to the incidence and severity of injuries likely to be sustained by county employees in the course of their hopefully less hazardous employment.

result of a workers' compensation claim. The city still was required to meet and confer on the issue. In the present case, the County anticipates similar claims. Potential increases in insurance premiums or claims seem to us an ordinary expense of doing business, be it private enterprise or county administration. Moreover, as the Union correctly points out, virtually every management decision entails some economic impact, and to exempt a changed condition of employment or safety rule from bargaining on that basis would quickly lead to the demise of employer-employee bargaining and the strong public policies underlying such bargaining. (Gov. Code, § 3500; *Fire Fighters Union* v. *City of Vallejo, supra*, 12 Cal.3d 608, 622.)

Second, we do not see how, in the language of the cases, a county employee's choice of on-the-job transportation is "at the core of entrepreneurial control" or would "alter the underlying nature of the business," or how meeting and conferring on the issue would "place an intolerable burden" upon the administration of Solano County. To the contrary, an employee's use of a particular form of transportation appears to us an incidental aspect of the employee's job responsibilities (although not, perhaps, an incidental aspect of the employee's working conditions) and a comparatively minor concern to any typical California county facing truly major problems. The County suggests in its appellate brief that employees riding motorcycles are not "businesslike," implying some impairment of the County's ability to operate effectively. This claim was neither raised below nor substantiated by any evidence.

Finally, these facts do not rise to the level of those California cases where the acknowledged impact of a rule on working conditions could be subordinated to an overriding need for a public policy determination not subject to bargaining. The use of deadly force by police (*San Jose Peace Officer's Assn.* v. *City of San Jose, supra*, 78 Cal.App.3d 935), the level of fire protection in a community (*Fire Fighters Union* v. *City of Vallejo, supra*, 12 Cal.3d 608), and the services provided welfare recipients (*Los Angeles County Employees Assn., Local 660* v. *County of Los Angeles* (1973) 33 Cal.App.3d 1 [108 Cal.Rptr. 625]), are critical public policy questions far removed from the issue of whether county employees should be allowed to ride their motorcycles on the job. The County's argument that precluding employee use of motorcycles protects the public is unpersuasive, as the only evidence before this court is that motorcyclists are vulnerable to greater injury themselves, not that they disproportionately *cause* accidents or *exacerbate* injuries to *others.*

We turn last to the only major fact issue in this case: whether the County's motorcycle rule is really a new rule at all. One test for determining whether a rule is subject to meet and confer is whether there has been a change in *practice* or *enforcement*. (See, e.g., *Local 777, Democratic U. Organizing Com.* v. *N. L. R. B., supra*, 603 F.2d 862, 889; *International Assn. of Fire Fighters Union* v. *City of Pleasanton* (1976) 56 Cal.App.3d 959, 972 [129 Cal.Rptr. 68]; *N. L. R. B.* v. *Miller Brewing Company, supra*, 408 F.2d 12, 15-16.) The County does not deny that its employees have been using their motorcycles on the job with full knowledge of their supervisors, and have been reimbursed by the County for such expenses. The County's refusal to permit employee Villanueva to continue using his motorcycle clearly indicates either a change of practice or enforcement. The rule is thus a meet and confer item, whether it is new or not.

## CONCLUSION

California courts have not been reluctant to intervene when a public agency has taken unilateral action without bargaining. In such situations, courts have been zealous in condemning the unilateral action and in granting appropriate relief. (*Vernon Fire Fighters* v. *City of Vernon, supra*, 107 Cal.App.3d 802, 823; Grodin, *Public Employment Bargaining in California: The Meyers-Milias-Brown Act in the Courts* (1972) 23 Hastings L.J. 719, 753-754.) The County's unilateral action constituted a per se violation of the Meyers-Milias-Brown Act.

The grant of the writ of mandate is affirmed.

White, P. J., and Barry-Deal, J., concurred.