EDMUND G. BROWN JR. Attorney General TAYLOR S. CAREY Deputy Attorney General
THE HONORABLE JACK SCOTT, CHANCELLOR, CALIFORNIA COMMUNITY COLLEGES, has requested an opinion on the following questions:
1. Is the Los Angeles Community College District Joint Labor Management Benefits Committee required to comply with the Ralph M. Brown Act?
2. If the Joint Labor Management Benefits Committee is required to comply with the Ralph M. Brown Act, is a closed session "caucus" of the employee members permissible? *Page 2 
 CONCLUSIONS
1. The Los Angeles Community College District Joint Labor Management Benefits Committee is not required to comply with the Ralph M. Brown Act.
2. Because we conclude that the Joint Labor Management Benefits Committee is not required to comply with the Ralph M. Brown Act, it follows that a closed "caucus" of the employee members is permissible.
 ANALYSIS
We are asked to determine whether meetings of the Joint Labor Management Benefits Committee (JLMBC) of the Los Angeles Community College District, as described below, are subject to the Ralph M. Brown Act[1] (Act). We conclude that they are not.
To aid our analysis, we have been provided with the following information: Pursuant to a collective bargaining agreement, the Los Angeles Community College District (District) provides its employees with a comprehensive health and welfare benefits package. The majority of the District's employees are represented by six exclusive bargaining units. Several years ago, each bargaining unit agreed to participate in a Master Benefits Agreement (MBA), which was incorporated into their respective collective bargaining agreements. The MBA provides, among other things, for the District and the exclusive representatives from each bargaining unit to participate in a Joint Labor Management Benefits Committee. The JLMBC's governing body is composed of one voting and one non-voting[2]
District Member appointed by the District Chancellor; six Employee Members, appointed by the exclusive representative of each bargaining unit; and an additional voting member, to serve as Chair, nominated by the President of the Los Angeles College Faculty Guild and confirmed by a majority of the regular voting members of the JLMBC. Each exclusive representative may also appoint non-voting members in proportion to the size of each bargaining unit. *Page 3 
The JLMBC's role is to contain the costs of the District's Health Benefits Program, while maintaining and improving the quality of the benefits available to District employees. The JLMBC is authorized to review the District's Health Benefits Program and to effect changes in the program that it deems necessary to contain costs, consistent with maintaining the quality of employee benefits. We are informed that this includes the authority to recommend the substitution of other plans for the District's existing health benefits plans. To achieve its objectives, the JLMBC is authorized to recommend the selection, replacement, and evaluation of benefits consultants; recommend the selection, replacement, and evaluation of benefit plan providers; study enrollee concerns and complaints and make recommendations for their resolution; participate in an annual review of the District's administration of the Health Benefits Program; and, review and make recommendations about the District's health benefits budget.
The rules enacted to govern the JLMBC's activities provide that actions of the JLMBC must be approved by the voting District member and all but one of the voting Employee Members in a meeting at which a quorum is present. A quorum consists of the voting District Member and any five voting Employee Members.
We are not an adjudicative, fact-finding body. It is our task to examine questions of law that arise from the interplay between settled facts, which have been provided for our information, and the body of law applicable to them. On occasion, however, we are required to examine factual assertions closely to ascertain how they fit within the law's operation. That is the case here; for although this opinion ultimately presents a straightforward application of law to facts, the facts themselves are subtle within the context of the applicable law.
When we are called upon to interpret the meaning or coverage of a statute, our primary task is to determine what the Legislature intended.[3] In doing so, we "look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose."[4] "If there is no ambiguity in the language of the statute, then the Legislature is presumed to have meant what it said, and the plain meaning of the *Page 4 
language governs."[5] In fact, if the statutory language is clear and unambiguous, further construction or interpretation is generally both unnecessary and inappropriate.[6]
Under the Act, "It is clearly the public policy of this state that the proceedings of public agencies, and the conduct of the public's business, shall take place at open meetings, and that the deliberative process by which decisions related to the public's business are made shall be conducted in full view of the public."[7] "The Brown Act has the objective of facilitating public participation in local government decisions and curbing misuse of the democratic process by secret legislation."[8] To that end, the Act "requires that most meetings of a local agency's legislative body be open to the public for attendance by all."[9] A "local agency" includes a "district . . . or any board, commission or agency thereof."[10] The Los Angeles Community College District is a local agency under Government Code section 54951.
Our first order of business is to determine whether the JLMBC is a legislative body of the District under the Brown Act.
Government Code section 54952 defines "legislative body" as:
 (a) The governing body of a local agency or any other local body created by state or federal statute.
 (b) A commission, committee, board, or other body of a local agency, whether permanent or temporary, decisionmaking or advisory, created by charter, ordinance, resolution, or formal action of a legislative *Page 5 
body. However, advisory committees, composed solely of the members of the legislative body that are less than a quorum of the legislative body are not legislative bodies, except that standing committees of a legislative body, irrespective of their composition, which have a continuing subject matter jurisdiction, or a meeting schedule fixed by charter, ordinance, resolution, or formal action of a legislative body are legislative bodies for purposes of this chapter.
It is evident that the JLMBC was not created by state or federal statute; therefore, it does not fit within the definition of a legislative body under section 54952(a). Subdivision (b), however, recites that a "committee . . . created by charter, ordinance, resolution, or formal action of a legislative body"[11] is a legislative body. Here the analysis must become more precise because the facts themselves are nuanced.
In Frazer v. Dixon Unified School District, the court considered whether a committee exercising authority delegated to it, pursuant to a formal policy directive issued by the district's governing board, was an official advisory committee — and thus a legislative body — under the Act. The court stressed that the focus of its inquiry was first on the authority under which the committee was created. The answer to that question turned on whether the committee was created by the board or by the district superintendent. Noting that the authority of the superintendent derives through the board and is subordinate to it, the court concluded that a formal written board policy calling for the appointment of an advisory committee to advise the superintendent constituted formal action within the contemplation of the Act.
A casual review of the history of the JLMBC could lead to the conclusion that it, too, was created by formal action of the Community College District's governing body. Indeed, the commentary received in support of this opinion request is strongly of that view. This impression is not entirely unreasonable, given the existence of a District Board Rule[12] regarding the JLMBC, which recites: "The District shall convene a Joint Labor/Management Benefits Committee (JLMBC) as prescribed by the Master Agreement between the District and the exclusive representatives of its employees." It has been suggested that this language supplies the "formal action" element required by subdivision (b) of section 54952 in the same manner as found by the court in Frazer. Were that the case, it would follow that the JLMBC, which is an advisory body with a *Page 6 
continuing subject matter jurisdiction otherwise in conformity with the statute, would fit the definition of a legislative body under the Act and would be subject to its open meeting requirements.
We believe, however, that careful scrutiny of the District Board's rule, placed in its proper contextual relationship to the MBA, compels a different view. Subdivision (b) of section 54952 applies to legislative bodies that are created by local agencies. That is not the case here. On closer inspection, it is apparent that the JLMBC finds its genesis not in the Rule adopted by the District Board, but in the Master Agreement between the District and its employee labor representatives.[13]
It is well settled that labor-management negotiations, or "meet-and-confer sessions," when conducted pursuant to the Meyers-Milias-Brown Act[14] between designated representatives of a local agency and designated representatives of a union, are not subject to the Act.[15] As outlined above, it is the JLMBC responsibility to "contain the costs of the District's Health Benefits Program, while maintaining and improving the quality of the benefits available to District employees." Health benefits are matters of employee health, safety, and training, which fall squarely within the recognized scope of collective bargaining.[16] The JLMBC formation springs directly from collective bargaining between an employer and the exclusive bargaining representatives of the employer's workforce. With its ongoing responsibility to monitor the employees' health benefits, the JLMBC plays a continuing role in the collective bargaining process with respect to a mandatory subject of bargaining. In furtherance of the objects and purpose *Page 7 
of collective bargaining, the Master Agreement, at Article IV, subsection A, recites that, "The District shall convene, and the Exclusive Representatives shall all participate in, a Joint Labor/Management Benefits Committee (JLMBC)."
Unlike the formal board policy described in Frazer, which actuallycreated the body in question, the District's rule here merely implements a predecessor provision in the Master Benefits Agreement, which is the product of the collective bargaining process between labor and management. The existence of the Master Agreement compelled the adoption of the District's Board Rule. The Master Agreement, not the District Board Rule, creates the JLMBC and prescribes its composition, duties, and scope of authority. The Master Agreement commands the parties to act, and the subsequent District Board rule responds to that command, acknowledging the agreement's primacy with the phrase "as prescribed by the Master Agreement." The Master Agreement establishes the District's duty under collective bargaining to convene, or call, the benefits JLMBC together, which the District fulfilled by adopting its rule. Strictly speaking, this was not an act of establishment or creation, but merely of implementation.
When we interpret a statute, we are required to give the words their plain meaning. We do so here. To "create" means, among other things, "to bring into existence," or "to produce or bring about by a course of action or behavior."[17] The JLMBC was brought into existence through the process of collective bargaining memorialized in the Master Agreement. Having established the JLMBC, the Master Agreement conferred upon the District the complementary obligation to cause the JLMBC to assemble, which the District discharged through the adoption of Rule 101702.10.
Because the JLMBC was created through the process of collective bargaining as memorialized in the Master Agreement, it does not come within the definition of a legislative body under section 54952.[18] We therefore conclude that the Los Angeles Community College District Joint Labor Management Benefits Committee is not required to comply with the Ralph M. Brown Act.
Because the JLMBC is not a legislative body within the meaning of the Act, it follows that the Act's open meeting provisions do not bar closed-session meetings, or "caucuses," of the JLMBC's employee members. We caution, however, that although the *Page 8 
JLMBC may conduct its operations unconstrained by the limitations imposed by the Act, any consideration given by the District Board to the JLMBC's recommendations do come within the requirements of the Act and must be conducted in compliance with its open meeting provisions.
Because we conclude that the Joint Labor Management Benefits Committee is not required to comply with the Ralph M. Brown Act, it follows that a closed "caucus" of the employee members is permissible.
[1] Govt. Code § 54950 et seq.
[2] In the absence of the voting member, the non-voting member may vote in his/her stead.
[3] Freedom Newsps., Inc. v. Orange Co. Employees Ret. Sys.,6 Cal. 4th 821, 826 (1993).
[4] Dyna-Med, Inc. v. Fair Empl. Hous. Commn., 43 Cal. 3d 1379,1386-1387 (1987).
[5] People v. Coronado, 12 Cal. 4th 145, 151 (1995) (internal quotes and citations omitted).
[6] Diamond Multimedia Sys., Inc. v. Super. Ct., 19 Cal. 4th 1036, 1047
(1999); Williams v. Superior Court, 92 Cal. App. 4th 612, 620-621
(2001).
[7] Epstein v. Hollywood Ent. Dist. II Bus. Improvement Dist.,87 Cal. App. 4th 862, 867 (2001).
[8] Morrow v. Los Angeles Unified Sch. Dist., 149 Cal. App. 4th 1424,1439 (2007).
[9] Los Angeles Times Commun. v. Los Angeles Co. Bd. of Supervisors,112 Cal. App. 4th 1313, 1321 (2003); see also Govt. Code § 54953(a).
[10] Govt. Code § 54951; see also Kavanaugh v. W. Sonoma Co. Union HighSch. Dist., 29 Cal. 4th 911 (2003) (school district board is legislative body of local agency, subject to the Act).
[11] Frazer v. Dixon Unified Sch. Dist., 18 Cal. App. 4th 781, 795
(1993).
[12] Los Angeles Community College Dist. Bd. of Trustees Rules, ch. X, art. XVII, Rule 101702.10 (adopted Nov. 6, 2002). See
http://www.laccd.edu/board_rules/.
[13] The MBA is incorporated into the collective bargaining agreement between the District and its employee unions. See
http://www.laccdadmin.org/contract.pdf.
[14] Govt. Code §§ 3500-3511.
[15] See 61 Ops.Cal.Atty.Gen. 1, 9 (1978) (bargaining committee of county board of supervisors "does not, under any circumstances, fall within the purview of the open meeting requirements.").
[16] E.g., Solano Co. Employees' Assn v. Co. of Solano,136 Cal. App. 3d 256, 262 (1982) ("We see no reason to depart from the apparent intent of the cases that all safety issues . . . are mandatory subjects of collective bargaining, or as in this case, of meet and confer."); Social Workers' Union, Local 535 v. Alameda Co. WelfareDept., 11 Cal. 3d 382, 391 (1974). See also, e.g.,61 Ops.Cal.Atty.Gen. 323, 326 (1978) (scope of representation under meet-and-confer provisions of Meyers-Milias-Brown Act "shall include allmatters relating to employment conditions and employer-employee relations.") (citing Govt. Code § 3504).
[17] http://www.merriam-webster.com/dictionary/create.
[18] Although we do not consider it dispositive, our conclusion in this regard is bolstered by the absence of the JLMBC among the official standing committees listed on the LACCD's official website. See
http://www.laccd.edu/about_us/. *Page 1